BETTY M. PALEN, Independent Ex'r of the Estate of David Scott Palen, Deceased, Plaintiff-Appellant and Cross-Appellee, v. DAEWOO MOTOR COMPANY, LTD., d/b/a Daewoo-FSO, Warsaw, *et al.*, Defendants-Appellees and Cross-Appellants (Daewoo Motor America (Central), Inc., *et al.*, Defendants).

First District (2nd Division)   No. 1—02—0365

Opinion filed June 14, 2005.—Rehearing denied July 13, 2005.

Clifford Law Offices (Robert A. Clifford and Michael Krzak, of counsel), and Novoselsky Law Offices (David A. Novoselsky and Leslie J. Rosen, of counsel), both of Chicago, for appellant.

Piper Rudnick, LLP, of Chicago (William J. Campbell, Jr., and Catherine M. Burkhardt, of counsel), for appellees.

PRESIDING JUSTICE BURKE delivered the opinion of the court:

Plaintiff Betty Palen, as independent executor of the estate of David Palen, deceased, appeals from an order of the circuit court (1) granting defendants Daewoo Motor Company, Ltd. (DMC),[1] Daewoo Corporation (Daewoo Corp.),[2] Daewoo Group, Daewoo Heavy Industries, Ltd. (Heavy Industries), "Daewoo FSO Motor SP. z.o.o." (Daewoo-FSO),[3] and Kim Woo-Choong's motions to dismiss plaintiff's complaint for lack of personal jurisdiction and (2) granting defendant Daewoo Motor America, Inc.'s (DMA)[4] motion to dismiss based on the doctrine of *forum non conveniens*. On appeal, plaintiff contends that: (1) the trial court erred in granting Daewoo Corp., Daewoo Group, Heavy Industries, Daewoo-FSO, and Kim Woo-Choong's motion to

---

[1]DMC was incorrectly sued as Daewoo Motor Company, Ltd., d/b/a/ Daewoo-FSO, Warsaw.

[2]Daewoo Corporation was sued under its proper name, but also incorrectly sued under the name of Daewoo Corporation Co., Ltd.

[3]"Daewoo FSO Motor SP. z.o.o." was apparently incorrectly sued as "Daewoo FSO Motor SP. Zoo."

[4]Daewoo Motor America, Inc., was incorrectly sued as Daewoo Motor America (Central), Inc.

dismiss plaintiff's complaint because the above entities and individual waived their right to contest personal jurisdiction by serving general interrogatories on plaintiff that sought information not related to their special and limited appearance; (2) personal jurisdiction may be asserted over DMC, Daewoo Corp., Daewoo Group, Heavy Industries, Daewoo-FSO, and Kim Woo-Choong, pursuant to section 2—209(b)(4) of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2—209(b)(4) (West 2000)), because the above entities and individual are "doing business" in Illinois; (3) DMA's motion to dismiss plaintiff's cause of action based on the doctrine of *forum non conveniens* was untimely as a matter of law; and (4) the trial court abused its discretion in dismissing plaintiff's cause of action based on the doctrine of *forum non conveniens*. Defendants DMC, Daewoo Corp., Daewoo Group, Heavy Industries, and Kim Woo-Choong cross-appeal, arguing that the trial court erred in denying in part their motion to quash service of summons. For the reasons set forth below, we affirm.

## STATEMENT OF FACTS

On September 30, 1997, decedent David Palen was a passenger in an automobile that crashed into a tree in Poland, killing everyone inside. On January 20, 1998, plaintiff, decedent's wife, filed a complaint based on negligence (case No. 98 L 710) against DMC, DMA, and Daewoo America Development (Illinois) Corporation (Daewoo Illinois), alleging that they, "by and through their agents and/or employees, owned[,] operated, *** and controlled" the vehicle in which the decedent was killed, and that jurisdiction was proper over the above defendants because each "engaged in and transacted business" in Illinois. In her complaint, plaintiff alleged claims based on wrongful death and survival. Daewoo Illinois was subsequently dismissed from the lawsuit for reasons unrelated to this appeal.

On June 12, DMA filed its answer and affirmative defenses to plaintiff's complaint, and DMC filed a special and limited appearance requesting that the trial court quash service of summons and dismiss the action against it based on lack of personal jurisdiction. DMC argued that it was a Korean corporation with its principal place of business in Korea and had not done any acts by which it submitted itself to the jurisdiction of Illinois courts. The trial court subsequently granted plaintiff's motion to conduct special and limited discovery relating to the issue of personal jurisdiction over DMC.

On September 30, plaintiff initiated a second lawsuit (case No. 98 L 11276) based on negligence against Daewoo Corp., Daewoo Group, Heavy Industries, Daewoo-FSO, and Kim Woo-Choong (collectively the Palen II defendants). As plaintiff had in case No. 98 L 710, she alleged

in her complaint filed in case No. 98 L 11276 that the Palen II defendants, "by and through their agents and/or employees, owned[,] operated, *** and controlled" the vehicle in which the decedent was killed, and alleged causes of action based on wrongful death and survival. Plaintiff attempted to effectuate service upon each of the Palen II defendants by leaving copies of the complaint and summons with Kim Woo-Choong, in his individual capacity and as an "agent for the above corporations," while he was giving a speech in Chicago, Illinois, on September 30, 1998.

On December 22, after filing special and limited appearances to contest jurisdiction, the Palen II defendants filed a motion to quash service of summons and dismiss plaintiff's complaint based on lack of personal jurisdiction, arguing that Kim Woo-Choong was a citizen and resident of South Korea, that Daewoo Group was not a legal entity,[5] and that the remaining Palen II defendants were either South Korean or Polish corporations that were not doing business in Illinois. The Palen II defendants also argued that Daewoo-FSO and Daewoo Group were not properly served through Kim Woo-Choong because Kim Woo-Choong was neither an officer nor an agent of their companies. Attached to their motion to quash and dismiss was: the affidavit of Lee Sung Won, executive director of Daewoo Corp., who averred that Daewoo Corp. was a South Korean corporation with its principal place of business in South Korea, was engaged in the business of trading and international investment, and had never maintained an office, held property, hired employees, or otherwise done business in Illinois; the affidavit of Sang-Il Park,[6] who averred that, as a South Korean attorney practicing in the area of, among others, general corporate law, he was familiar with Daewoo Group and that Daewoo Group was "not a corporation or other entity" that had the capacity to sue or be sued; the affidavit of Shin Young-Kyun, president of Heavy Industries, who averred that Heavy Industries was a South Korean corporation with its principal place of business in South Korea, was engaged in the business of manufacturing heavy machinery and vehicles, and had never maintained an office, held property, hired employees, or otherwise done business in Illinois; the affidavit of Kin Kwang Woong, the "Legal Coordinator" of Daewoo-FSO, who averred that Daewoo-FSO was a Polish corporation with its principal place of business in Poland, was in the business of manufacturing motor vehicles, and had

---

[5] The Palen II defendants claimed that Daewoo Group was simply "a common name for an amalgamation of separate corporations."

[6] Sang-Il Park's affidavit was initially stricken by the trial court, but was subsequently refiled and considered by the trial court.

never maintained an office, held property, hired employees, or otherwise done business in Illinois; and the affidavit of Kim Woo-Choong, who averred that he was a citizen and resident of South Korea, had never owned property or otherwise done business in Illinois, and was not an officer or agent of Daewoo-FSO or Daewoo Group at the time he was served with the summons or presently.

On December 18, in case No. 98 L 710, DMA filed a motion for summary judgment, arguing that it had no connection to the accident which allegedly gave rise to plaintiff's action. On January 20, 1999, the trial court granted DMA's motion, dismissing plaintiff's complaint against DMA without prejudice. Also on January 20, DMC, the sole remaining defendant in case No. 98 L 710, filed a notice of removal of the cause to the United States District Court for the Northern District of Illinois. On February 17, plaintiff filed a first amended complaint in case No. 98 L 710 in the circuit court, again alleging wrongful death and survival claims against DMC and DMA. Plaintiff also alleged in her amended complaint that DMC and DMA "were part of a commonly controlled family of 'Daewoo' entities," including Daewoo Group, Heavy Industries, Daewoo Corp., Daewoo-FSO, and Kim Woo-Choong. On March 3, DMA filed a motion in the district court to dismiss plaintiff's amended complaint in case No. 98 L 710, pursuant to Federal Rule of Civil Procedure 12(b)(6) (Fed. R. Civ. P. 12(b)(6)), for failure to state a claim upon which relief may be granted. This motion was never ruled upon by the district court, and, on April 1, the district court remanded the matter back to the circuit court based on insufficient allegations regarding citizenship for complete diversity. On June 11, case No. 98 L 710 was consolidated with case No. 98 L 11276.

On August 24, DMC filed a "renewed" motion to quash service of process and dismiss plaintiff's complaint for lack of jurisdiction.[7] In support of its motion, DMC attached the affidavit of H.S. Hwang,[8] "legal manager" of DMC, who averred that DMC was a South Korean corporation with its principal place of business in South Korea, was in the business of manufacturing vehicles, and had never had offices or facilities, employees or agents, or otherwise done business in Illinois.

On April 10, 2001, DMA filed a motion to dismiss plaintiff's consolidated cases on the ground of *forum non conveniens*, arguing

---

[7]DMC explained in its motion that the case had been removed to the district court before the trial court had the opportunity to rule on its previous motion filed on June 12, 1998, and, since the case had been remanded and consolidated, it now wished to renew its previous motion.

[8]H.S. Hwang's affidavit was initially stricken by the trial court, but was subsequently refiled and considered by the court.

that all defendants in plaintiff's action were nonresidents of Illinois, that all witnesses to the accident, documents, and other tangible evidence needed to try the cases were located in Poland, that plaintiff's claims were controlled by the laws of Poland, and that plaintiff had also filed a lawsuit in Poland "seeking the same relief sought in this action." Attached to DMA's motion were plaintiff's answers to the interrogatories previously propounded by the Palen II defendants,[9] in which plaintiff admitted that: she lived in Illinois only from October 5, 1997, to January 15, 1998; the decedent never lived or maintained a residence in Illinois; and the decedent's estate "has been or is being probated" in Will County, Illinois.

The trial court allowed additional and limited discovery with respect to the issue of jurisdiction over the Palen II defendants and, on July 17, Kim Woo-Choong filed a response to plaintiff's special and limited interrogatories. In his response, Kim Woo-Choong stated: he had been the chairman of Daewoo Corp. since January 1, 1981, representative director of Daewoo Corp. since March 23, 1998, chairman and representative director of Heavy Industries since March 27, 1998, and chairman and representative director of DMC since April 11, 1998; at the time he was served with summons, Daewoo Corp. was the parent corporation of DMA; he had never worked for DMA or Daewoo-FSO, but, on rare occasions, he assisted with DMA's promotional activities upon its request for him to do so; as representative director of Daewoo Corp., he had, over the years, voted in favor of incorporating various subsidiaries and affiliates, including DMA and Daewoo-FSO, although he did not have any role in the day-to-day operations of any of the companies, and had voted in favor of certain directors for corporations in which Daewoo Corp. owned stock, including Daewoo-FSO, DMA, Heavy Industries, and DMC; of all the defendants named in plaintiff's lawsuit, he only owned shares of stock in Heavy Industries; he never had authority to direct which individuals DMA should hire or fire; and he never personally provided financing or guarantees for DMA or Daewoo-FSO.

Kim Woo-Choong further stated that: his autobiography was published from 1991 to 1996; a publishing company distributed his autobiography throughout the United States, including Illinois, but he did not know how many copies were distributed in Illinois; he was invited to give a speech in Chicago by Moon Hyun Kim, the former president of DMA, when he was served with summons; Chicago was one of the several United States cities he visited as a representative of

---

[9]The record does not reveal the date that these interrogatories were served on plaintiff.

Daewoo Corp., and his purpose was to assist DMA "in launching its sales of Daewoo brand automobiles in the United States"; he was also in Chicago around 1970 as Daewoo Corp.'s president "to secure a contract [with Sears Roebuck & Co.] for the sale of dress linen shirts"; and, on average, he had visited Illinois once per year for the last 30 years, with most of those visits being layovers at O'Hare airport.

DMA also answered interrogatories propounded by plaintiff, stating: it is a Delaware corporation; it is a United States "distributor and dealer of Daewoo automobiles" that are manufactured by DMC in Korea and imported from Daewoo Corp.; in 1998, DMA was a wholly owned subsidiary of Daewoo Corp.; DMA sells automobiles in the United States at DMA's company-owned stores; and DMA maintains headquarters in California and has a regional office in Illinois. In Daewoo-FSO's answers to plaintiff's interrogatories, Daewoo-FSO stated: neither it nor any of its divisions, departments, subsidiaries, or affiliates are or were related to DMA; its shareholders are Heavy Industries, Daewoo Corp., the State Treasury of Poland, and various employees of Daewoo-FSO; it had never maintained or financed the maintenance of any address or telephone number in Illinois; no automobiles manufactured by Daewoo-FSO had ever been shipped to and/or distributed in the United States; and it had no connection with the websites www.daewoo.com and www.daewoous.com.

Additionally, Chang-Ki Min, general manager of Daewoo Corp., testified in a deposition that DMA was "set up" after a decision had been made by Daewoo Corp.'s board of directors. He also testified that, although Daewoo Corp. had the authority to elect persons to DMA's board of directors, it never paid the salaries of DMA's employees or managers. Rather, according to Min, DMA paid its own salaries. None of the employees of Daewoo Corp. are, or were, also employees of DMA. He further testified that Daewoo Corp. and DMA did not share any common departments, that Daewoo Corp. did not influence the promotion or hiring of any employees within DMA, and that none of "the assets of the companies named in this lawsuit" were "commingled with one another."

Min further testified that: Kim Woo-Choong was the founder of "Daewoo"; Daewoo Corp. is not a subsidiary but, rather, is its own corporate entity; in 2000, DMA became a wholly owned subsidiary of DMC; Daewoo Corp.'s "business purpose" can be defined as "[t]rading, financing, project organization ***, resource development" and investing; Daewoo Corp. also produces car seats from a factory in Korea, but the car seats are not sold in Illinois; presently, Daewoo Corp. does not "have anything to do" with the marketing of automobiles; in 1997 or 1998, there was no one at Daewoo Corp. who

was responsible for overseeing and evaluating whether DMA was "doing a good job"; after DMA's inception, Daewoo Corp. gave DMA's board of directors authority to conduct the company's business; the officers of Daewoo Corp. did not determine the policies of DMA; DMA filed annual reports with Daewoo Corp. because of Daewoo Corp.'s shareholder status; in 1997 and 1998, Daewoo Corp. sold completed cars to DMA; the prices of the cars sold by DMA were determined by DMA; Daewoo Corp. did not "approve" DMA's manuals or sales brochures; and Kim Woo-Choong was authorized to receive service of process only by Daewoo Corp., DMC, and Heavy Industries. When Min was asked, "[Did] Daewoo Corp. *** dictate any of the policies and procedures that [DMA] uses in selling vehicles," he answered, "No, not at all." When asked whether Daewoo Corp. had "anything to do with trading, financing, project organizing, resource development and investing with [DMA]," Min answered, "No." He stated that "[DMA] is a corporation just solely established for the sale of the cars," but denied that DMA was "in existence as of 1997 for the mutual benefit of Daewoo Corp."

Documents were also produced during the special and limited discovery. Daewoo Corp.'s 1997 "Annual Report" showed that, as of December 31, 1997, the company owned 37% of DMC; 29.91% of Heavy Industries, and 22.25% of Daewoo-FSO.[10] Plaintiff submitted documentation apparently printed from the websites of www.daewoo.com and www.daewoous.com, which listed DMA as a subsidiary of "Daewoo Group," and spoke of "Daewoo Group," "Daewoo" in general, and its "global companies." Plaintiff also submitted a "Daewoo" marketing brochure.

On January 4, 2002, the trial court entered a memorandum opinion and order (1) granting in part "defendant's [DMC's renewed]" motion to quash service of process, (2) granting "defendant's" motion to dismiss for lack of personal jurisdiction, and (3) granting DMA's motion to dismiss on the ground of *forum non conveniens*, thereby dismissing plaintiff's consolidated cases in their entirety. This appeal and cross-appeal followed.

## ANALYSIS

### Personal Jurisdiction

#### A. Waiver

■ Plaintiff contends that the trial court erred in granting DMC,

---

[10]Another document, entitled "Notes to Consolidated Financial Statements" for December 31, 1997, and 1996, stated that Daewoo Corp. had an ownership interest of 37% in DMC, 30.75% in Heavy Industries, and 64.35% in Daewoo-FSO.

Daewoo Corp., Daewoo Group, Heavy Industries, Daewoo-FSO, and Kim Woo-Choong's (hereinafter, collectively referred to as the Daewoo defendants[11]) motion to dismiss plaintiff's complaint for lack of personal jurisdiction because the Daewoo defendants waived their right to contest jurisdiction. Specifically, plaintiff argues that certain "general" interrogatories filed by the Daewoo defendants constituted a general appearance on their behalf, and, as a result, their right to contest personal jurisdiction was waived. The Daewoo defendants maintain that plaintiff waived the issue for appeal by failing to present her argument to the trial court.

It is well settled that " '[a]n argument not raised in the trial court and presented for the first time on appeal is waived ***.' [Citation.]" *Johnson Press of America, Inc. v. Northern Insurance Co. of New York*, 339 Ill. App. 3d 864, 874, 791 N.E.2d 1291 (2003). In the instant case, a review of the record reveals that plaintiff failed to present this argument to the trial court before the court ruled on the Daewoo defendants' motion to quash service and dismiss plaintiff's complaint for lack of jurisdiction. Accordingly, we find that plaintiff waived the issue for appeal.

## B. Doing Business in Illinois

Plaintiff next contends that the trial court erred in granting the Daewoo defendants' motion to dismiss plaintiff's complaint for lack of personal jurisdiction because, pursuant to the theory expressed in *Maunder v. DeHavilland Aircraft of Canada, Ltd.*, 102 Ill. 2d 342, 466 N.E.2d 217 (1984), she sufficiently proved that the Daewoo defendants were "doing business" in Illinois. Plaintiff argues that "there is only one Daewoo" and that this court should not separate the Daewoo defendants into "distinct entities" when deciding whether Illinois courts have jurisdiction over them because they hold themselves out as a single corporate entity.

The Daewoo defendants contend that each of their challenges to personal jurisdiction must be evaluated individually and that, when so evaluated, the record shows that they were not doing business in Illinois. Alternatively, the Daewoo defendants argue that the exercise of an Illinois court's jurisdiction over them would violate both federal and Illinois due process because requiring them to defend plaintiff's

---

[11]We note that Daewoo-FSO is not represented in this appeal. There is no reason given for Daewoo-FSO's absence except for a statement made by the Palen II defendants' attorneys, Piper Rudnick LLP, that they no longer represent Daewoo-FSO. As a result of Daewoo-FSO's absence, Daewoo-FSO is not considered here as part of the collective term "the Daewoo defendants" for purposes of the arguments set forth by them on appeal.

action in Illinois would violate traditional notions of fair play and substantial justice. The Palen II defendants maintain that the theory expressed in *Maunder* does not apply to the instant case.

■ For purposes of determining personal jurisdiction, a plaintiff " 'carr[ies] the burden of establishing a *prima facie* basis upon which jurisdiction over the defendant can be exercised. \*\*\*' [Citation.]" *Stein v. Rio Parismina Lodge*, 296 Ill. App. 3d 520, 523, 695 N.E.2d 518 (1998). "A plaintiff's *prima facie* case may be overcome by a defendant's uncontradicted evidence that defeats jurisdiction." *Alderson v. Southern Co.*, 321 Ill. App. 3d 832, 846, 747 N.E.2d 926 (2001). When a trial court determines jurisdiction solely on the basis of documentary evidence, and hears no courtroom testimony, we review the issue of jurisdiction *de novo. Alderson*, 321 Ill. App. 3d at 846. See also *Stein*, 296 Ill. App. 3d at 523.

■ ■ Section 2—209(b)(4) of the Code provides that Illinois courts may exercise jurisdiction in any action arising within or without Illinois against any person who "[i]s a natural person or corporation doing business in this State." 735 ILCS 5/2—209(b)(4) (West 2000). With respect to section 2—209(b)(4) of the Code, we note that

> "[t]he 'doing business' standard is quite high and requires a showing that the defendant is conducting business of such character and extent as to warrant the inference that the corporation has subjected itself to the jurisdiction and laws of the forum. [Citations.] The defendant must transact business in Illinois ' "not occasionally or casually, but with a fair measure of permanence and continuity." ' [Citations.] Thus, the statute requires a 'course of business' or 'regularity of activities' as opposed to isolated or sporadic acts. [Citations.] Once the doing business standard is satisfied, the defendant is deemed a resident of Illinois and may be sued on causes of action both related and unrelated to its Illinois activities." *Alderson*, 321 Ill. App. 3d at 848-49.

The court's determination of whether a defendant is doing business in Illinois varies based upon the facts of each case, with the court's focus being on whether the defendant's contacts were purposely directed toward Illinois. *Morecambie Maritime, Inc. v. National Bank of Greece, S.A.*, 354 Ill. App. 3d 707, 711, 821 N.E.2d 780 (2004). In determining whether a defendant's contacts were purposely directed toward Illinois, the relevant time period to be reviewed by the court begins when the claim arose and extends to the date the lawsuit was filed and service was attempted, with "the critical point of inquiry [being] the time the defendant was made a party to the suit and was served." *Riemer v. KSL Recreation Corp.*, 348 Ill. App. 3d 26, 36, 807 N.E.2d 1004 (2004).

In *Maunder*, our supreme court recognized the appropriateness of asserting personal jurisdiction over a foreign parent corporation when the parent corporation's subsidiary, which is subject to the jurisdiction of Illinois courts, is acting as the parent corporation's Illinois agent and the parent corporation is, in effect, doing business through its subsidiary due to the high amount of control exhibited over its subsidiary. *Haubner v. Abercrombie & Kent International, Inc.*, 351 Ill. App. 3d 112, 122, 812 N.E.2d 704 (2004). The *Maunder* court found that a foreign parent corporation was doing business through its subsidiary, and, thus, the subsidiary was qualified, as an agent, to accept service of process on behalf of the corporation,[12] when the evidence showed that: the subsidiary was wholly owned by the parent company; the subsidiary was established for the purposes of selling aircraft parts for the parent and, as described by its own manual, to " 'provide [p]roduct [s]upport to the American users of the Parent Company's products' "; the subsidiary telephoned the parent company an average of eight times per day; and the parent company paid the salaries of the subsidiary's directors, guaranteed the subsidiary's lease in Illinois, and included the subsidiary's address in its own advertising. *Maunder*, 102 Ill. 2d at 345-47.

■ However, "Illinois courts cannot assert personal jurisdiction over the nonresident parent corporation simply because they have personal jurisdiction over the local subsidiary." *Morecambie Maritime, Inc.*, 354 Ill. App. 3d at 711. As noted in *Behr v. Club Med, Inc.*, 190 Ill. App. 3d 396, 546 N.E.2d 751 (1989), the *Maunder* decision was *not*

___

[12]As noted in *Schlunk v. Volkswagenwerk Aktiengesellschaft*, 145 Ill. App. 3d 594, 600-01, 503 N.E.2d 1045 (1986), the two prerequisites for an Illinois court to exercise personal jurisdiction over a defendant are that (1) the defendant conduct sufficient activity within Illinois to submit to the jurisdiction of our courts and (2) the defendant be properly served with process. *Schlunk*, 145 Ill. App. 3d at 600. The test of whether a defendant is "doing business" in Illinois is primarily a test to determine whether jurisdiction is proper under the former prerequisite. *Schlunk*, 145 Ill. App. 3d at 600. However, many Illinois decisions use the "doing business" test in determining whether jurisdiction over a parent company is proper under the latter prerequisite, *i.e.*, the "doing business" test is used to determine whether service of process on a parent corporation through its subsidiary is valid. The analyses under both prerequisites focus on the relationship between the parent and subsidiary corporation. *Schlunk*, 145 Ill. App. 3d at 600-01. Thus, regardless of which prerequisite the Illinois courts, in their decisions, are focusing on, the examination of the amount of control of a parent company, over its jurisdictionally amenable subsidiaries, necessary for the parent company to be doing business in Illinois is the same.

*based solely on the fact that a subsidiary corporation was wholly owned* by its parent corporation, but, rather, was based on the degree of control which the parent corporation exercised over the subsidiary. *Behr*, 190 Ill. App. 3d at 405. "Parents of wholly-owned subsidiaries necessarily control, direct, and supervise subsidiaries to some extent. If, however, the subsidiary is conducting its own business, then an Illinois court may not assert *in personam* jurisdiction over the parent simply because it is the parent." *Alderson*, 321 Ill. App. 3d at 854. Factors to consider when determining whether the parent corporation is doing business in Illinois through its subsidiary include:

"(1) the control exercised by the parent over the subsidiary, (2) obligations of the subsidiary to service the parent's products, (3) inclusion of the subsidiary's name and address in the parent's advertising, (4) joint sponsorship of promotional activities, (5) interlocking directorships, (6) the sites of meeting[s] of the subsidiary's board of directors, and (7) whether the subsidiary is authorized to prosecute trademark infringement suits in the parent's name." *Wissmiller v. Lincoln Trail Motosports, Inc.*, 195 Ill. App. 3d 399, 403, 552 N.E.2d 295 (1990).

Accordingly, in *Wissmiller*, the court found that the evidence did "not support a conclusion" that an American subsidiary and foreign manufacturer had such a "close relationship" as to make service upon the American subsidiary's registered Illinois agent proper for service of process on the foreign manufacturer, where the foreign manufacturer submitted unrefuted evidence, through an affidavit, that it had its own employees and did " 'not control or supervise the daily business affairs' " of the American subsidiary, that the American subsidiary was " 'totally autonomous' " from the foreign manufacturer, and that " 'each set their own policies and operate[d] their business separate and apart from each other.' " *Wissmiller*, 195 Ill. App. 3d at 404. In addition, the court *in Morecambie Maritime, Inc.*, found that it did not have personal jurisdiction over a foreign parent corporation that had a subsidiary with an Illinois office because the subsidiary was "a separate, fully capitalized corporation, distinct from [the parent], that maintain[ed] its own books, records, tax returns, and financial statements," paid its own bills, funded its own operations, had different executives than that of the parent company, and was not susceptible to the parent company's participation in its "daily decisionmaking." *Morecambie*, 354 Ill. App. 3d at 712.

■ In the instant case, we first note that we reject plaintiff's contention that we should consider the Daewoo defendants as a single corporate entity for purposes of determining whether Illinois courts can assert personal jurisdiction over them. Plaintiff's contention is not

only unsupported by Illinois case law, but refuted by it. See, *e.g.*, *Haubner*, 351 Ill. App. 3d at 118-22 (in a case against three Illinois tour operators, collectively known as the Illinois A&K defendants, and three foreign tour operators, known as A&K Uganda, A&K Kenya, and A&K Luxembourg, even though, in their complaint, the plaintiffs referred to all of the defendants as "A&K," the court considered each defendant individually for purposes of determining whether it could assert personal jurisdiction over them). Accordingly, we evaluate the appropriateness of asserting personal jurisdiction over each of the Daewoo defendants individually.

## 1. Daewoo Group

■ Daewoo Group submitted an affidavit from a South Korean practicing attorney who averred that Daewoo Group was not a legal entity that can sue or be sued, and plaintiff submitted no evidence to the contrary. As stated by the court in *Tyler v. J.C. Penney Co.*, 145 Ill. App. 3d 967, 496 N.E.2d 323 (1986):

> "A prime requisite to maintaining a proper lawsuit is that the parties, whether plaintiffs or defendants, be either a natural or an artificial person. [Citation.] Our law recognizes that legal corporations, partnerships, or other associations registered with this State are, in effect, artificial persons amenable to lawsuit in this jurisdiction.
>
> *** Where a suit is brought against an entity which is legally nonexistent, the proceedings are void *ab initio* ***." *Tyler*, 145 Ill. App. 3d at 972.

Because the uncontroverted evidence shows that Daewoo Group is a legally nonexistent entity, we find the proceedings here are void *ab initio*, and, as a result, the trial court properly granted Daewoo Group's motion to dismiss for lack of personal jurisdiction.

## 2. Heavy Industries, Daewoo-FSO, and DMC

■ The undisputed evidence set forth in the record also shows that Heavy Industries, Daewoo-FSO, and DMC, when examined individually, cannot be said to be doing business in Illinois pursuant to section 2—209(b)(4) of the Code. With respect to Heavy Industries, Shin Young-Kyun's uncontroverted affidavit stated that Heavy Industries was a South Korean corporation that never maintained an office, held property, hired employees, or otherwise did business in Illinois. With respect to Daewoo-FSO, the uncontroverted affidavit of Kin Kwang Woong stated that Daewoo-FSO was a Polish corporation that never maintained an office, held property, hired employees in Illinois, or otherwise did business in Illinois. Likewise, with respect to DMC, H.S. Hwang averred that DMC was a South Korean corporation that never

maintained offices or facilities, hired employees, or otherwise did business in Illinois.

Further, although it is apparent that personal jurisdiction may be asserted over DMA, as it failed to contest personal jurisdiction in the proceedings below and admitted that it maintained an office in Illinois, plaintiff failed to set forth any evidence in the proceedings below suggesting that Heavy Industries or Daewoo-FSO was a parent company of, or had any control whatsoever over, DMA, such that Heavy Industries or Daewoo-FSO would be considered to be doing business in Illinois through DMA. With respect to DMC, there was evidence that DMA became a wholly owned subsidiary of DMC in 2000, but this evidence is irrelevant for purposes of determining whether DMC was doing business through DMA because the relevant time period to be considered by us began when the claim arose, in this case September 1997, and extended to the date the suit was filed and service was attempted in January 1998. Accordingly, we find that the trial court properly granted Heavy Industries, Daewoo-FSO, and DMC's motion to dismiss for lack of personal jurisdiction.

### 3. Kim Woo-Choong

■ Kim Woo-Choong's testimony, as set forth in his affidavit and deposition, shows that he is a citizen and resident of South Korea and that he has never owned property in Illinois. He further testified that he has only visited Illinois approximately once per year for the past 30 years, with most of the visits being a result of layovers at O'Hare airport. These isolated and sporadic acts are not the kind of regular business activities needed to warrant the inference that Kim Woo-Choong has submitted himself to the jurisdiction and laws of Illinois. Nor has plaintiff provided any evidence to support a conclusion that Kim Woo-Choong somehow controlled DMA in September 1997.

We briefly note that, although plaintiff argues that Kim Woo-Choong's autobiography, published in the United States from 1991 to 1996, and his trip to Chicago in approximately 1970 to secure a business deal with Sears Roebuck & Co., weigh in favor of finding that Illinois courts can assert personal jurisdiction over him, these contacts cannot be considered in the jurisdictional analysis because, as stated above, in determining whether Kim Woo-Choong's contacts were purposely directed toward Illinois, the relevant time period to be considered begins when the claim arose, which, in the instant case, is September 1997. Accordingly, we find that the trial court properly found that it lacked personal jurisdiction over Kim Woo-Choong.

### 4. Daewoo Corp.

■ With respect to Daewoo Corp., Lee Sung Won averred that the

corporation was a South Korean corporation with its principal place of business in South Korea, and this evidence was uncontroverted by plaintiff. Thus, the question is whether Illinois courts can obtain personal jurisdiction over Daewoo Corp., pursuant to the theory expressed in *Maunder*, because it was doing business in Illinois through its subsidiary, DMA, at the time it was served. With regard to this question, we note that the record on appeal consists of various volumes of affidavits, answers to interrogatories, depositions, and other documentary evidence. From these extensive records, however, there is very little evidence to support plaintiff's contention that Daewoo Corp. was doing business through DMA.

With respect to the amount of control Daewoo Corp. had over DMA, the fact that DMA was, at the relevant time period, a wholly owned subsidiary of Daewoo Corp., that Daewoo Corp.'s board of directors voted to create DMA, and that Daewoo Corp. elected DMA's initial board of directors arguably weigh in favor of finding that Daewoo Corp. was doing business in Illinois through DMA. However, there are numerous other facts that suggest Daewoo Corp. did not have the necessary control over DMA to be considered doing business in Illinois through DMA. For instance, there was evidence that Daewoo Corp. never paid the salaries of DMA's employees or managers, no DMA employee was also an employee of Daewoo Corp., Daewoo Corp. did not share any common departments with DMA, Daewoo Corp. did not influence the promotion or hiring of any employees within DMA, none of DMA's assets was commingled with Daewoo Corp., no one at Daewoo Corp. was responsible for overseeing and evaluating DMA's performance, neither Daewoo Corp. nor its officers determined the policies of DMA, Daewoo Corp. did not "approve" DMA's manuals or sales brochures, DMA's own board of directors conducted the company's business, Daewoo Corp. received annual reports from DMA only in its capacity as shareholder, and DMA itself determined the prices of the cars it sold.

Additionally, while Daewoo Corp. sent Kim Woo-Choong to assist in the launching of DMA's sales of automobiles in the United States and the website www.daewoo.com may have promoted international name-recognition advertising on behalf of Daewoo Corp. and its subsidiaries, there is no evidence that there were any obligations on the part of DMA to service Daewoo Corp.'s products; that DMA or Daewoo Corp. shared the same board of directors; that any of DMA's board of directors meetings were held in South Korea; or that DMA was authorized to prosecute trademark infringements in Daewoo Corp.'s name. Because plaintiff failed to prove Daewoo's control over DMA was such that it can be said that Daewoo Corp. was doing busi-

ness through DMA, we find that the trial court properly granted Daewoo Corp.'s motion to dismiss for lack of personal jurisdiction.

We briefly note that the cases plaintiff relies upon, in support of her contention that Daewoo Corp. was doing business in Illinois through DMA, are distinguishable. For example, *Alderson*, and other cases that have similarly found that a parent company was "doing business" through it's subsidiary, all involved parent corporations that had more control over their respective Illinois subsidiaries than the case at bar. See, *e.g.*, *Alderson*, 321 Ill. App. 3d at 855 (the court found that personal jurisdiction existed over the foreign parent company because it was doing business through its subsidiary where there was evidence that the subsidiary's day-to-day operations were overseen by the parent, the parent was primarily a holding company and described by its president as an " 'umbrella company' " that formed subsidiary corporations merely to "bid on projects \*\*\*, \*\*\* for tax purposes, or to own the assets that '[the parent was] doing business out of,' " the subsidiary's purchase of a power plant required the approval of the parent's board of directors, the parent's name and logo were part of the subsidiary's letterhead, and the parent conducted "national name-recognition advertising" on behalf of its various subsidiaries); *Japax, Inc. v. Sodick Co.*, 186 Ill. App. 3d 656, 664-65, 542 N.E.2d 792 (1989) (the court found that personal jurisdiction over the foreign parent corporation existed where the parent, *inter alia*, " 'loaned' " its wholly owned subsidiary employees and guaranteed millions of dollars on behalf of the subsidiary, "most" of the subsidiary's officers and board members "c[a]me from" the parent company, the subsidiary regularly communicated with the parent, and the subsidiary's officer regularly reported to the parent's executive managing director); *Schlunk*, 145 Ill. App. 3d at 602-04 (the court found the subsidiary to be an agent of the foreign parent manufacturer for the determination of whether there had been proper service of process where the parent, *inter alia*, had no liability to the wholly owned subsidiary for late or nondelivery of its product, demanded consultation with the subsidiary in establishing dealerships and sales objectives, obligated the subsidiary to prosecute suits in the parent's name in certain situations, had complete discretion in determining the warranty terms offered by the subsidiary to its customers, demanded that the subsidiary service all of its products irrespective of whether they were originally sold in the subsidiary's territory, demanded that the subsidiary "fully inform" the parent "of all aspects of [the subsidiary's] business," had eight members on its board of directors who were also directors of the subsidiary, and had five of the subsidiary's seven board meetings in the parent's home domicile of West Germany).

Even the *Haubner* court—which, out of all the Illinois cases that have found that *personal jurisdiction existed* over a foreign corporate parent, based its decision on the *least amount* of specified control between the defendant parent corporation and its subsidiary—involved a parent corporation that had more control over its subsidiary than is shown in the instant case. In *Haubner*, the court found that personal jurisdiction existed over a foreign parent corporation where the evidence, although not specified in the opinion, showed that the parent operated as a holding company for its subsidiaries and "[t]here [wa]s no evidence that [the parent] existed for any other purpose," the parent owned a majority interest in the subsidiary, the marketing and promotional materials included the same general name, and the court was able to conclude that the subsidiary was a "mere conduit[ ]" through which the parent did business. *Haubner*, 351 Ill. App. 3d at 122. In the instant case, there is no evidence, despite extensive discovery, that Daewoo Corp. existed only or primarily as a holding company for DMA or its other subsidiaries. To the contrary, Daewoo Corp.'s executive director stated that it was in the business of trading and international investment and its general manager noted that Daewoo Corp. was a producer of car seats. Moreover, there was extensive evidence, as set forth above, of DMA's autonomy from Daewoo Corp., contradicting the contention that DMA was a mere conduit through which Daewoo Corp. did business. Clearly, there is less evidence in the instant case to support a finding that Daewoo Corp. was doing business through DMA than there was in *Haubner*.

Because none of the Daewoo defendants can be said to be doing business in Illinois pursuant to section 2—202(b)(4) of the Code, we need not address the issue of whether the Daewoo defendants had sufficient minimum contacts with Illinois, such that the assertion of personal jurisdiction over them would not offend traditional notions of fair play and substantial justice. Accordingly, we find that the trial court properly granted the Daewoo defendants' motions to dismiss plaintiff's complaint for lack of personal jurisdiction.

## CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court of Cook County.

Affirmed.

WOLFSON and HALL, JJ., concur.