FOURTH DIVISION
January 31, 2008

No. 1-06-2905

COMPASS ENVIRONMENTAL, INC.,  ) Appeal from the Circuit Court of
a Delaware corporation,  ) Cook County, Illinois
  )
  Plaintiff-Appellee,  ) No. 06 L 5526
  )
  v.  ) Honorable Paddy McNamara,
  ) Judge Presiding
POLU KAI SERVICES, L.L.C., a Virginia  )
limited-liability company,  )
  )
  Defendant-Appellant.  )
  )

JUSTICE MURPHY delivered the opinion of the court:

Plaintiff, Compass Environmental Services, Inc., a Delaware corporation with its principal

place of business in Chicago, filed suit against defendant, Polu Kai Services, L.L.C., a Virginia

limited-liability company. After the trial court denied defendant's motion to quash pursuant to

section 2-301(a) of the Code of Civil Procedure (735 ILCS 5/2-301(a) (West 2004)), defendant

petitioned for leave to appeal pursuant to Supreme Court Rule 306(a)(3) (210 Ill. 2d R.

306(a)(3)). For the following reasons, we affirm.

## I. BACKGROUND

Shaw Environmental, Inc., entered into a contract with the Army Corps of Engineers for

the installation of government-supplied sheeting and temporary roofing on residences in Louisiana

damaged by Hurricane Katrina. Plaintiff agreed to be Shaw's subcontractor on this roofing work. Plaintiff performed a portion of the services in the contract and subcontracted a portion of the work to defendant.

In May 2006, plaintiff filed a four-count complaint in the circuit court of Cook County alleging that defendant breached its subcontract and two settlement agreements. Attached to plaintiff's complaint was an unsigned purchase order, numbered 1002680002 and dated October 12, 2005. The top of the purchase order showed plaintiff at a Chicago address; in the box below, it said "ship to: Compass Environmental, Inc.," in Sulpher, Louisiana. The bottom of both pages of the purchase order provided, "SEE TERMS AND CONDITIONS ON REVERSE SIDE. *** Please sign this purchase order and return to purchasing department at the above address. For any questions of concerns please call (312) 432-3913."

The third page of the exhibit was a list of terms and conditions, including paragraph 21, which provides as follows:

> "JURISDICTION AND ATTORNEY'S FEES--Venue for any litigation arising out of this Order, including suits for payment, shall be in the State of Illinois. The prevailing party in such litigation shall be entitled to reasonable attorney's fees. Any dispute regarding the terms and conditions of this Order, including suits for payments, shall be determined in accordance with the rules and laws of the State of Illinois without regard to its conflict of law provision."

Plaintiff also submitted an invoice of defendant's dated January 1, 2006, which showed a "bill to" and "ship to" address for plaintiff in Chicago.

Defendant filed a motion to dismiss the complaint for lack of personal jurisdiction alleging (1) the trial court lacked personal jurisdiction over defendant and (2) the forum-selection clause did not apply because the reverse side of the purchase order, which contained additional terms and conditions, was not included in the version that plaintiff e-mailed to defendant. Sean Jensen, defendant's president, averred in an affidavit that defendant initiated work on the subcontract before receiving the purchase order, which plaintiff sent via e-mail. The e-mailed copy did not contain the additional terms and conditions that were included in the exhibit to plaintiff's complaint. Defendant did not receive a copy of the purchase order via United States mail. Jensen calls the exhibit to plaintiff's complaint a "forgery" and alleges that "Compass did not present to me, nor did I sign or agree to the terms or conditions contained" on the attached purchase order. Furthermore, no one on behalf of either plaintiff or defendant executed the purchase order attached to the complaint.

Jensen further averred that defendant does not transact business in Illinois and has no property or employees in Illinois. None of defendant's employees had ever visited Illinois to negotiate with plaintiff regarding the purchase order, and it performed all of its obligations with respect to the purchase order outside Illinois. Defendant only communicated with plaintiff's Texas office regarding the events described in the complaint.

In response, plaintiff filed an affidavit by Martin Battistoni, plaintiff's chief operating officer. He averred that plaintiff maintains satellite offices throughout the country, including Texas. All of plaintiff's purchase orders are printed in Chicago with its Chicago address and phone number. All of plaintiff's checks are printed with its Chicago address and all payments to

its subcontractors are made through its Chicago headquarters. The Compass personnel who were primarily involved with defendant are located throughout the country, including Chicago, Indianapolis, and Texas, and travel frequently.

Battistoni also stated that it is plaintiff's policy that all purchase orders are printed with terms and conditions on the back side and mailed to vendors. The copy of purchase order 1002680002 that he maintained in his files is a "copy of what I would have mailed to the vendor and it includes the standard 'Terms and Conditions' on the reverse side." In addition, he said, "I believe" that plaintiff mailed defendant a copy of the purchase order that contained the standard terms and conditions on the reverse side. A letter dated May 5, 2006, from Battistoni to Jensen, which is also included in the record, was written on plaintiff's Texas letterhead.

John Markoff, plaintiff's procurement manager, averred that he prints all purchase orders and mails them to the vendor. While he had no specific recollection of mailing purchase order 1002680002, he had no reason to believe that he did not follow standard procedure for that purchase order. The copy of purchase order 1002680002 that he maintained in his files is a "copy of what I would have mailed to the vendor and it includes the standard 'Terms and Conditions' on the reverse side." In addition, he said, "I believe that I mailed" defendant a copy of the purchase order that contained the standard terms and conditions on the reverse side.

A letter in the record dated May 9, 2006, from defendant's attorney to plaintiff states that Jensen received a telephone call from John Weber requesting that defendant "deploy to Sulfur Louisiana to commence work, further representing the contract would meet him there." It further provides, "On or about October 14, 2005, Mr. Jensen received a FedEx package containing a

purchase order dated October 12, 2005 ***. Polu Kai had already been working, in good faith, for 4 days." The parties do not acknowledge this letter in their briefs. At oral argument, defendant admitted that it received a hard copy of the entire purchase order via FedEx.

On September 15, 2006, the trial court denied defendant's motion to quash service and dismiss the complaint without an evidentiary hearing. This appeal followed.

## II. ANALYSIS

### A. Forum-Selection Clause

The purchase order attached to the complaint had a page of additional terms and conditions, which included an Illinois forum-selection clause. Defendant contends that the forum-selection clause was not part of the contract and, alternatively, that the clause is unenforceable.

Defendant contends that it has offered "legitimate evidence that it did not receive the version of the purchase order that Compass now proffers as the genuine article." It is undisputed that the electronic version of the purchase order that defendant received did not include the reverse side. Defendant also points to the affidavits of plaintiff's executives that they "*think* the reverse side of the purchase order was" sent to defendant using United States mail (emphasis added). In addition, in his affidavit Jensen states that defendant did not receive the purchase order via United States mail.

During oral argument, this court drew the parties' attention to a letter from defendant's attorney, which neither party acknowledged in its briefs, even though it was included in defendant's appendix and the short supporting record that it prepared in support of its petition for leave to appeal. The letter provides that on October 10, 2005, the parties orally agreed that

defendant would begin work in Louisiana and that on October 14, 2005, Jensen "received a FedEx package containing a purchase order dated October 12, 2005." Defendant therefore admitted at oral argument before this court that it received the purchase order, complete with the terms and conditions on the reverse side, via FedEx. It then shifted its argument, claiming that when it received the hard copy via FedEx, it had no reason to believe that it superseded the e-mailed copy.

We disagree. We find that, by its course of conduct, defendant assented to the "terms and conditions" on the reverse side of the purchase order, including the forum-selection clause. See *Landmark Properties, Inc. v. Architects International-Chicago*, 172 Ill. App. 3d 379, 383 (1988) (a party can indicate assent to the terms of a contract through its acts or conduct even when it has not signed it); *Amelco Electric Co. v. Arcole Midwest Corp.*, 40 Ill. App. 3d 118 (1976). It is undisputed that defendant began work pursuant to the contract before receiving the purchase order via e-mail. When it received the electronic version of the purchase order, it did not inquire as to the "terms and conditions on reverse side" but, rather, continued working. Defendant argues that it was reasonable to conclude that the "reverse side" of the purchase order was actually page two of the purchase order. We reject defendant's argument. If that were the case, both sides of the purchase order would be in the same format and nothing would provide for the "terms and conditions."

Finally, when defendant received a copy of the purchase order via FedEx, it continued to work. Although "[f]or course of conduct to act as consent to a contract, it must be clear that the conduct relates to the specific contract in question" (*Landmark Properties*, 172 Ill. App. 3d at

383), there is no indication in the record that defendant, upon receipt of the purchase order via FedEx, inquired about the terms and conditions on the reverse side, nor did it stop performing under the contract or attempt to rescind.

Defendant argues that it was entitled to an evidentiary hearing on the issue of whether it received the reverse side of the purchase order. Defendant cites *TCA International, Inc. v. B&B Custom Auto, Inc.*, 299 Ill. App. 3d 522 (1998), for the idea that when there is conflicting evidence as to jurisdictional matters, a trial court errs when it rules without an evidentiary hearing. It also contends, however, that the evidence was not conflicting because plaintiff's evidence does not squarely refute defendant's evidence that it did not receive it. In addition, it conceded at oral argument that it received a hard copy containing the terms and conditions several days after it received the e-mailed copy. We therefore reject defendant's argument.

Second, defendant contends that even if the forum-selection clause is part of the contract, it is unenforceable because it is unreasonable. A forum-selection clause in a contract is *prima facie* valid and should be enforced unless the opposing party shows that enforcement would be unreasonable under the circumstances. *Calanca v. D&S Manufacturing Co.*, 157 Ill. App. 3d 85, 87 (1987). The party opposing the enforcement of the clause must show that "trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Calanca*, 157 Ill. App. 3d at 87-88. To determine the reasonableness of a forum-selection clause, the court should consider: (1) the law that governs the formation and construction of the contract, (2) the residency of the parties, (3) the place of execution and/or performance of the contract, (4) the location of the parties and their witnesses,

(5) the convenience to the parties of any particular location, and (6) whether the clause was equally bargained for. *Calanca*, 157 Ill. App. 3d at 88; *Yamada Corp v. Yasuda Fire & Marine Insurance Co.*, 305 Ill. App. 3d 362, 368 (1999).

The first factor favors plaintiff, as the same forum-selection provision also provides that any disputes regarding the conditions of the purchase order would be governed by the law of the state of Illinois. The second factor is a draw: plaintiff is a Delaware corporation with its principal place of business in Illinois, while defendant is a Virginia limited-liability company. The third factor favors defendant, since the subcontract was performed in Louisiana, entirely outside Illinois.

Employees of plaintiff's that were involved in the subcontract appear to be from Texas. In addition, as the work was performed in Louisiana, presumably witnesses are also located there. Plaintiff's executives that were involved in the settlement negotiations are located in Illinois.

Defendant argues that the fifth factor is a draw because "Illinois is no doubt as convenient to Chicago-based Compass as it is to Virginia-based Polu Kai." However, the record does not reflect any evidence as to the relative convenience of the parties. Even assuming that defendant will suffer some inconvenience by litigating this case in Illinois, "relative inconvenience has been routinely rejected as a basis for voiding forum selection clauses." *Dace International, Inc. v. Apple Computer, Inc.*, 275 Ill. App. 3d 234, 239 (1995). Defendant has not established that litigating in Illinois would be so serious a hardship that it would have to abandon its defense.

Defendant argues that the sixth factor "weighs strongly against enforcing the forum-selection clause" because it was boilerplate language and there is no evidence that the clause was

equally bargained for. The clause was part of a preprinted agreement and there is no indication in the record that the parties negotiated over those terms. "Nevertheless, the fact that [it] did not object to or attempt to negotiate the clause is no reason to invalidate it. They were business entities as opposed to ordinary consumers, and this court is not persuaded that they were in need of protection when contracting for business services." *IFC Credit Corp. v. Rieker Shoe Corp.*, No. 1-05-1310, slip op. at 13 (December 27, 2007). As *IFC Credit* noted, the First District has consistently enforced forum-selection agreements between experienced business people. *IFC Credit Corp.*, slip op. at 18-19, citing *Aon Corp. v. Utley,* 371 Ill. App. 3d 562, 570 (2006); *Dace*, 275 Ill. App. 3d at 241; *Calanca*, 157 Ill. App. 3d at 88. Furthermore, when defendant received the full purchase order via Fed Ex, it did not object or attempt negotiation with regard to the forum-selection clause. See *Aon Corp.*, 371 Ill. App. 3d at 570.

Defendant relies on *Mellon First United Leasing v. Hansen*, 301 Ill. App. 3d 1041 (1998), which, in addition to finding a lack of personal jurisdiction, also found that the forum-selection clause included in the contract was unenforceable. In *Mellon*, it was not until after the terms of the agreement, such as the type of equipment, terms of the lease, and amount of payments, were set that the plaintiff went to the defendant company's California office to sign the document. No mention was made of the Illinois forum-selection clause, and she was not given a copy of the lease until years later. The clause was located on the back page of a preprinted form in small typeface.

The Second District refused to enforce the clause. The court noted that "it [did] not appear that the clause was reached through arm's-length negotiation between experienced business persons of the same stature." *Mellon*, 301 Ill. App. 3d at 1046. "Rather, it was part of

boilerplate language in small print on the back of a preprinted form used by the plaintiff in its lease agreements." *Mellon*, 301 Ill. App. 3d at 1046. The plaintiff was more akin to an ordinary consumer involved in a small transaction than a sophisticated business person of stature equal to the leasing company. *Mellon*, 301 Ill. App. 3d at 1046. Furthermore, the plaintiff had no reason, until the last moment, to believe that she would be dealing with an Illinois corporation if a legal dispute occurred. *Mellon*, 301 Ill. App. 3d at 1046. "We believe it would be unfair and unreasonable to require defendant to litigate this small claim in Illinois." *Mellon*, 301 Ill. App. 3d at 1047.

Unlike the defendant in *Mellon*, defendant is not an inexperienced business owner "akin to an ordinary consumer." According to the complaint, defendant is an environmental-services and site-engineering company that provided services in the wake of Hurricane Katrina. While the extent of the parties' negotiations on the initial subcontract is not described in the record, defendant was an active negotiator when it came to the settlement agreements, as evidenced by the e-mails in the record. Furthermore, the *Mellon* court was hesitant to require the defendant to litigate the "small claim" seeking less than $4,000 in Illinois. This is not a small claim; count I alone alleges damages ranging from $168,000 to $184,800 for breach of contract.

Finally, *IFC Credit* has called the *Mellon* holding into question: "the reasoning of that case is not persuasive and the distinctions it sought to draw are ambiguous." *IFC Credit Corp.*, slip op. at 20. Instead of *Mellon*, *IFC Credit* followed *Dace*, "which held business entities to their contractual bargains, but clarified that Illinois courts have not accepted the federal law trend of enforcing forum selection clauses in contracts involving unsophisticated consumers in small

transactions in the marketplace without any real opportunity to consider the acceptance of a forum selection clause." *IFC Credit Corp.*, slip op. at 20-21, citing *Dace*, 275 Ill. App. 3d at 241.

We conclude that the forum-selection clause was part of the agreement between plaintiff and defendant and that it was enforceable.

### B. Personal Jurisdiction

Defendant further argues that it did not have sufficient minimum contacts with Illinois to support personal jurisdiction.

For purposes of determining personal jurisdiction, a plaintiff carries the burden of establishing a *prima facie* basis upon which jurisdiction over the defendant can be exercised. *Palen v. Daewoo Motor Co.*, 358 Ill. App. 3d 649, 659 (2005). A plaintiff's *prima facie* case may be overcome by a defendant's uncontroverted evidence that defeats jurisdiction. *Palen*, 358 Ill. App. 3d at 659. When a trial court determines jurisdiction solely on the basis of documentary evidence and hears no courtroom testimony, an appellate court reviews the issue of jurisdiction *de novo*. *Palen*, 358 Ill. App. 3d at 659.

Section 2-209(c) of the long-arm statute allows an Illinois court to "exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c) (West 2004); *Kostal v. Pinkus Dermatopathology Laboratory, P.C.*, 357 Ill. App. 3d 381, 383 (2005). Thus, the long-arm statute has been held to be coextensive with the due process requirements of the Illinois and United States Constitutions. *Kostal*, 357 Ill. App. 3d at 383.

To satisfy federal due process requirements, a nonresident defendant must have sufficient

minimum contacts with the forum state so that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice. [Citation.]" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158 (1945). In addition, federal due process requires that the action arise out of the defendant's contacts with the forum state and that it be reasonable to require the defendant to litigate in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-77, 85 L. Ed. 2d 528, 540-44, 105 S. Ct. 2174, 2181-85 (1985). Under the Illinois Constitution's guarantee of due process, "[j]urisdiction is to be asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts" that occur in Illinois or that affect interests located in Illinois. *Rollins v. Ellwood*, 141 Ill. 2d 244, 275 (1990).

### 1. *General jurisdiction*

"General jurisdiction can be found when a defendant has continuous and systematic general business contacts with the forum." *Bolger v. Nautica International, Inc.*, 369 Ill. App. 3d 947, 951 (2007). "Illinois limits general jurisdiction over nonresidents to instances in which the nonresident was present and doing business in the forum." *Bolger*, 369 Ill. App. 3d at 951. That standard requires the defendant to transact its business within the state "not occasionally or casually, but with a fair measure of permanence and continuity." *Haubner v. Abercrombie & Kent International, Inc.*, 351 Ill. App. 3d 112, 119 (2004). The "doing business" standard is "quite high." *Haubner*, 351 Ill. App. 3d at 119. It means that, " '[i]n effect, the foreign corporation has taken up residence in Illinois and, therefore, may be sued on causes of action both related and unrelated to its activities in Illinois.' [Citation.]" *Roiser v. Cascade Mountain, Inc.*,

367 Ill. App. 3d 559, 563 (2006).

Defendant does not transact business in Illinois and has no property or employees in Illinois. None of defendant's employees had ever visited Illinois to negotiate with plaintiff regarding the purchase order, and it performed all of its obligations with respect to the purchase order outside Illinois. Because defendant does not carry on business activities in Illinois with any degree of permanence or continuity, Illinois courts cannot exercise personal jurisdiction over it under a general-jurisdiction theory.

## 2. *Specific jurisdiction*

Defendant argues that it did not have sufficient minimum contacts with Illinois to support specific jurisdiction. The affidavits and documentary evidence in the record establish that defendant had the following contacts with Illinois: (1) entering into a contract with the Texas office of plaintiff, a Delaware company that is headquartered in Illinois; (2) receiving a purchase order that identifies plaintiff's Chicago office as well as a "ship to" address in Louisiana; (3) sending an invoice to plaintiff's Chicago office; (4) receiving subcontractor checks from plaintiff's Chicago office; and (5) having settlement discussions with Battistoni, who is located in Chicago. Defendant argues that it communicated almost entirely with plaintiff's Texas office, not the Illinois one, and its minimal contact with the Illinois office was insufficient.

*Commerce Trust Co. v. Air 1st Aviation Cos.*, 366 Ill. App. 3d 135 (2006), held that in determining whether a defendant purposely established minimum contacts with the forum state when a contract exists, a court focuses on "prior negotiations and future consequences, as well as on the terms of the contract and the course of dealing between the parties." *Commerce Trust*,

366 Ill. App. 3d at 143-44. See also *Viktron Ltd. Partnership v. Program Data Inc.*, 326 Ill. App. 3d 111, 118 (2001). Looking to prior negotiations and the course of conduct between the parties, we note that most of the communication regarding the subcontract originated in plaintiff's Texas office. However, defendant did negotiate with Chicago-based Battistoni regarding the settlement, and it also sent an invoice to Chicago and received at least two checks from that office. The work occurred in Louisiana, but the settlement agreements included in the record anticipated future dealings between the two companies, including payment.

Defendant relies on *Riemer v. KSL Recreation Corp.*, 348 Ill. App. 3d 26 (2004), which held that a defendant was not "doing business" in Illinois through its subsidiary, which had an office in Illinois, when the parent did not control the subsidiary's activities in Illinois. *Riemer* involved general instead of specific jurisdiction. Furthermore, defendant misunderstands plaintiff's corporate structure; even though defendant is incorporated in Delaware and has offices in a number of states, including Texas and Illinois, defendant contends that it dealt with a "Texas entity" and "a subsidiary of a corporation chartered in Delaware and headquartered in Illinois." Unlike *Riemer*, and contrary to defendant's argument, the Texas office was a satellite office, not a subsidiary of the plaintiff corporation.

Defendant also contends that mailing an invoice to Chicago was insufficient to establish jurisdiction. It compares its mailing of an invoice to Chicago to *Mellon* and *Commercial Coin Laundry Systems v. Loon Investments, LLC*, 375 Ill. App. 3d 26 (2007).

In *Mellon*, the defendant, a California resident, entered into a mailing equipment lease agreement with an Illinois company but stopped making payments. The negotiations took place in

California and her only contacts with Illinois were that the lease documents were sent to an Illinois office for approval and the defendant sent the payments to Illinois. The credit application and other documentation provided before she signed the agreement did not contain an Illinois address or area code. On appeal, the court held that when a "nonresident merely enters into a contract with a resident of the forum state, this fact is not sufficient by itself to subject the nonresident to the *in personam* jurisdiction of the forum state." *Mellon*, 301 Ill. App. 3d at 1048. "Defendant never set foot in Illinois. Her only connection with Illinois included correspondence-- forwarding the documents, presumably through the California vendor, for approval in Illinois and sending payments to an Illinois office." *Mellon*, 301 Ill. App. 3d at 1049. The court found these actions to be insufficient to satisfy the "minimum contacts" due process standard. *Mellon*, 301 Ill. App. 3d at 1049.

The *Mellon* court stressed that " 'if the nonresident buyer is a passive party who merely places an order by mail *** or to a salesperson and accepts the seller's price' through some form of solicitation," the court of the seller state cannot exercise personal jurisdiction over the buyer. *Mellon*, 301 Ill. App. 3d at 1048, quoting *Chalek v. Klein*, 193 Ill. App. 3d 767, 773 (1990). If the buyer departs from a passive role by dictating or vigorously negotiating contract terms the buyer may be considered an active buyer subject to personal jurisdiction in this state. *Mellon*, 301 Ill. App. 3d at 1048-49. The type of conduct that characterizes an active purchaser " 'is far more typical in dealings between major business organizations than in transactions in which a consumer or even a small shopkeeper is the purchaser.' " *Mellon*, 301 Ill. App. 3d at 1049, quoting *Chalek*, 193 Ill. App. 3d at 773. The court compared the defendant to a "passive, small shopkeeper

purchaser" instead of an active purchaser. *Mellon*, 301 Ill. App. 3d at 1049. Defendant here cannot be considered a "passive, small shopkeeper purchaser"; it falls squarely into the "major business organization" that the court identified as an active purchaser. Even though there are no facts in the record regarding the negotiation over the subcontract, it strains credulity to believe that defendant would not negotiate the terms of the subcontract.

In *Commercial Coin*, the Illinois-based plaintiff entered into a contract with the owner of an apartment building to lease the laundry areas of the building, located in Wisconsin. Years later, the defendant, a Wisconsin limited-liability company, acquired the building, and the plaintiff filed suit alleging, *inter alia*, breach of contract. On appeal, the court found that the defendant did not have the requisite minimum contacts with the state. *Commercial Coin*, 375 Ill. App. 3d at 34. Although the defendant assumed the contract between the plaintiff and the original building owner, the court found significant the fact that the defendant passively accepted the terms of the assumed contract instead of taking an "active role such as dictating or vigorously negotiating the contract terms or inspecting equipment in facilities in Illinois." *Commercial Coin*, 375 Ill. App. 3d at 33. In addition, the simple mailing of rent payments to or from Illinois was not enough to confer jurisdiction on Illinois. *Commercial Coin*, 375 Ill. App. 3d at 33. The defendant also possessed and controlled Illinois machines, but the court had previously held that possession and control by a nonresident of Illinois equipment for use in a foreign jurisdiction does not confer jurisdiction in Illinois. *Commercial Coin*, 375 Ill. App. 3d at 33. Finally, although the Illinois choice-of-law clause in the assumed contract was a "relevant consideration," a choice-of-law clause does not, by itself, confer personal jurisdiction. *Commercial Coin*, 375 Ill. App. 3d at 33-

34.

Here, defendant mailed an invoice to Chicago and received an unspecified number of checks from the Chicago office. There are no facts in the record regarding defendant's role in accepting the subcontract, but even if defendant negotiated, it apparently negotiated with the Texas office. The record demonstrates that defendant vigorously negotiated the settlement, including with Chicago-based Battistoni. Most relevant, however, is not only the Illinois choice-of-law clause, but the Illinois forum-selection clause. *Commercial Coin* found significant that the contract contained a choice-of-law clause, "one more arrow in [plaintiff's] quiver," instead of "a stronger and enforceable forum-selection clause." *Commercial Coin*, 375 Ill. App. 3d at 34.

Furthermore, plaintiff's causes of action arise out of defendant's minimum contacts. Regarding the claim for breach of the subcontract, defendant sent an invoice to and received checks from plaintiff's Chicago office, and the purchase order included the forum-selection clause. As for the claim regarding the breach of the settlement agreements, defendant negotiated with Battistoni, who was located in Chicago, and the settlement agreements assumed continuing obligations on defendant's part.

To establish personal jurisdiction, a court must also determine whether it is reasonable to require a nonresident defendant to litigate in the forum state. Five factors guide our inquiry: "(1) the burden on the defendant to defend the action in the forum state; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the action; and (5) the shared interests of the several states in advancing fundamental [state] policies." *Commerce Trust*, 366

Ill. App. 3d at 146. "Once a plaintiff has established that the defendant purposely directed his activities at the forum state, the defendant must present a compelling case that litigating the dispute there would be unreasonable." *Commerce Trust*, 366 Ill. App. 3d at 146.

First, defendant has not stated that it would be unduly burdensome to defend in Illinois. Second, plaintiff's part of the settlement negotiations occurred in Illinois, and the work under the subcontract occurred in Louisiana. However, Illinois "has a strong interest in providing its citizens with a convenient forum to litigate." *Commerce Trust*, 366 Ill. App. 3d at 146. Third, plaintiff is incorporated in Delaware and headquartered in Chicago. The fact that it filed suit in Illinois demonstrates that it has an interest in litigating in Illinois. See *Viktron*, 326 Ill. App. 3d at 124. Defendant advances no argument as to the last two reasonableness factors.

In summary, we conclude that defendant had sufficient minimum contacts with Illinois such that it is reasonable to require it to defend this action in Illinois.

### III. CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court.

Affirmed.

NEVILLE, P.J., and O'BRIEN, J., concur.