SUSQUEHANNA PATRIOT
COMMERCIAL LEASING
CO., INC., Appellant

v.

HOLPER INDUSTRIES, INC. and Holper'S Pest & Animal Solutions and Jeffrey H. Holper, North Fulton Feed & Seed Inc., and Alan D. Jessie, Ralph E. Hull Funeral Home Inc. and Franklin E. Hull, John Andrade Insurance Agency, Inc. and Mark Matrone, Virtualops.Com, Inc. and Marshall A. Brown, II, Jim's Motors, Inc., and Loren Scott Cape, Kenneth Stern, Inc. and Maryland Entertainment Connection and Kenneth S. Stern, A.B. Rusgo, Inc., and Alan B. Rusgo, Intercontinental Materials Management and Lance R. Shearer, Nationwide Mutual Insurance and Paul L.

Dennis, Atlas Chiropractice Center and Fernando Beteta, Jack Nash, Inc. and Edward J. Nash, Atlas Refreshman Co. and Joseph L. Troisi, Calabash Productions, Inc. and Edward W. Newmann, Drake & Associates, LLC and Timothy M. Drake, E–Home Inc. and Benjamin N. Rosner, EMO Energy Solutions, LLC And Eric M. Oliver, Sr., Appellees.

Superior Court of Pennsylvania.

Argued Aug. 29, 2006.

Filed June 12, 2007.

---

Walter H. Flamm, Jr. and Robert J. Krandel, Blue Bell, for appellant.

Larrick B. Stapleton, Ardmore, for Holper, Ind., Holpers Pest and Holper.

Sigmund J. Fleck, Philadelphia, for North Fulton and Jessie, Hull Funeral

Home and Matrone, Andrade Ins., and Matrone, Intercontinental Materials and Shearer, Nationwide and Dennis, Atlas Chiropractic and Beteta, Nash Inc., and Nash, Atlas Refreshman and Troisi, Calabash and Newman, Drake and Assoc. and Drake, E–Home and Rosner and EMO and Oliver, appellees.

Michael Gallagher, Lafayette Hill, for Virtualops, appellee.

John J. O'Brien, III, Wynnewood, for Jim's Motor and Cape, Stern Inc. and Maryland Entertainment and Stern, appellees.

Kevin B. Quinn, Philadelphia, for Rusgo Inc. and Rusgo, appellees.

BEFORE: KLEIN, BOWES and KELLY, JJ.

OPINION BY BOWES, J.:

¶ 1 At issue in this case is the enforceability of a "floating" forum selection clause in equipment leases. We conclude that the clause is enforceable under Pennsylvania law and therefore reverse and remand.

¶ 2 Appellant, Susquehanna Patriot Commercial Leasing Company, Inc., was assigned various leases for telecommunications equipment by NorVergence, Inc. The background of the leases in question bears repeating since there has been nationwide litigation, including litigation by various states' attorneys general and the Federal Trade Commission, over leases negotiated by NorVergence. *See http://www.ftc.gov. opa/2005/07/norvergence.htm; http://www. attorneygeneral.gov/consumers.*[1] NorVergence approached small businesses and consumers and represented that they could obtain a thirty-to-sixty percent savings on telephone, cellular, and internet bills by leasing a piece of equipment identified as a Matrix. NorVergence marketed its services as integrated, long-term packages that included provision of the telecommunication services, and leases were negotiated based on provision of those services. Meanwhile, the Matrix was a standard router or firewall device that was not capable of providing any reduced savings on the telecommunications services and was worth a fraction of its selling price.

¶ 3 The leases were then immediately assigned by NorVergence to third-party finance companies, including Appellant herein. NorVergence's contract with the purchaser stated that the money on the rental agreements for the equipment was owed regardless of whether NorVergence provided the promised telecommunications services, which, as noted, were integral to the equipment lease. After collecting millions from the equipment lease assignments, NorVergence declared bankruptcy,

1. The following appears at the website for the Pennsylvania attorney general:

The Pennsylvania Attorney General filed suit against NorVergence, Inc. and Peter J. Salzano in Somerset County Common Pleas Court on Wednesday, December 8, 2004. The complaint alleges that NorVergence, a Newark, New Jersey company currently in bankruptcy, and Salzano, the company's president, CEO and chairman, engaged in deceptive sales of landline and cellular phone service and Internet access bundled with equipment that included the company's "Matrix" box which was represented as a special device that would enable NorVergence to offer their customers a 30% discount on their entire telecommunication packages.

It is alleged that although the "Matrix" boxes had values ranging from $350 to $1,500, NorVergence had signed rental agreements for the "Matrix" box which required them to make total payments of as much as $300,000. The rental agreements were then assigned to finance companies that continue to pursue the customers for payments, despite the fact that all services have been terminated rendering the equipment virtually worthless.

the purchasers of the Matrix stopped receiving telecommunications services, and in turn, they stopped making payments under the leases to the finance companies. The money received by the principals of NorVergence has not been recovered.

¶ 4 In the present case, Appellant was assigned leases negotiated by NorVergence in New Jersey and Maryland. The appeal before us concerns seventeen actions instituted by Appellant to enforce leases executed by small New Jersey and Maryland business entities. The basis for personal jurisdiction over the lessees is a forum selection clause contained in each lease. The forum selection clause in question, which is commonly referred to as a floating forum selection clause since it confers jurisdiction over an action in the home jurisdiction of an assignee of the lessor, reads as follows:

This agreement shall be governed by, construed and enforced in accordance with the laws of the State in which the Rentor's principal offices are located or, if this Lease is assigned by Rentor, the State in which the assignee's principal offices are located, without regard to such State's choice of law considerations and all legal actions relating to this lease shall be venued exclusively in a state or federal court located within that State, such court to be chosen at the Rentor or Rentor's assignee's sole option.

¶ 5 As noted, thousands of identical leases have been the subject of litigation throughout the United States. There is a split of authority regarding the enforceability of the floating forum selection clause in the leases negotiated by NorVergence. The NorVergence forum selection clause was enforced in *Preferred Capital, Inc. v. Associates in Urology*, 453 F.3d 718 (6th Cir.2006), *IFC Credit Corp. v. Aliano Bros. General Contractors, Inc.*, 437 F.3d 606 (7th Cir.2006) (overruling

several district court cases to the contrary), *Edge Telecom, Inc. v. Sterling Bank*, 143 P.3d 1155 (Colo.App.2006), *Secure Financial Service, Inc. v. Popular Leasing USA, Inc.*, 391 Md. 274, 892 A.2d 571 (2006) (suggesting that clause is enforceable and remanding on procedural point), and in New York at the trial level. *E.g. Studebaker–Worthington Leasing, Corp. v. New Concepts Realty, Inc.*, 14 Misc.3d 1233(A), 836 N.Y.S.2d 503, 2007 WL 529672 (N.Y.Dist.Ct.2007). It has also been upheld by a federal district court in Pennsylvania, although the decision was not reported in the federal supplement. *Commerce Commercial Leasing, LLC v. Jay's Fabric Center*, 2004 WL 2457737 (E.D.Pa.2004).

¶ 6 On the other hand, the NorVergence forum selection clause was ruled invalid in Ohio, *Preferred Capital, Inc. v. Power Engineering Group, Inc.*, 112 Ohio St.3d 429, 860 N.E.2d 741 (Ohio 2007), as well as in Georgia. *SRH, Inc. v. IFC Credit Corp.*, 275 Ga.App. 18, 619 S.E.2d 744 (Ga.App. 2005) (court refused to dismiss rescission action regarding NorVergence lease where dismissal was requested on basis of forum selection clause). In the present case, the trial court concluded that the reasoning of the cases refusing to enforce the clauses was more persuasive than the reasoning of the cases to the contrary.

¶ 7 However, we conclude that the clause is enforceable under Pennsylvania law. Since the sole issue involves a question of law, we exercise plenary review over the trial court's decision. *Patriot Commercial Leasing Co., Inc. v. Kremer Restaurant*, 915 A.2d 647 (Pa.Super.2006) (contract construction is question of law and appellate review is plenary).

¶ 8 At the onset, we note the difficulty in disassociating the obvious and egregious fraud utilized to procure these leases from the analysis of whether to uphold the floating forum selection clause. Nevertheless,

in the interest of judicial uniformity, all cases must be analyzed in accordance with overriding principles of law that cannot depend upon facts not implicated in the application of those principles. We must confine ourselves accordingly.

¶ 9 We recently discussed the enforceability of a forum selection clause in *Patriot Commercial Leasing, id.* We noted in that case that the modern rule of jurisprudence begins with the presumption that a forum selection provision in a contract is enforceable. *E.g., Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Pennsylvania follows this trend. *Central Contracting Co. v. C.E. Youngdahl & Co.,* 418 Pa. 122, 209 A.2d 810 (1965). In *Central Contracting,* our Supreme Court advised that these clauses will be enforced "when the parties have freely agreed that litigation shall be conducted in another forum and where such agreement is not unreasonable at the time of litigation." *Id.* at 133, 209 A.2d at 816. The *Central Contracting* Court continued by defining the circumstances under which a forum selection clause will be considered unreasonable, stating that such a clause is unreasonable "only where its enforcement would, under all circumstances existing at the time of litigation, seriously impair a party's ability to pursue his cause of action." *Id.* It stated, "Mere inconvenience or additional expense is not the test of unreasonableness since it may be assumed that the party received under the contract consideration for these things." *Id.* The Court further refined what constitutes serious impairment, holding, "If the agreed upon forum is available to a party and said forum can do substantial justice to the cause of action then that party should be bound by his agreement." *Id.* at 133–34,

209 A.2d at 816. *Accord Bancorp Group, Inc. v. Pirgos, Inc.,* 744 A.2d 791 (Pa.Super.2000) (upholding forum selection clause that was clear and unambiguous). This precept especially holds firm when, as in the present case, the contract is between business enterprises. Thus,

> a forum selection clause in a commercial contract between business entities is presumptively valid and will be found to be unenforceable based on unreasonableness only when: 1) the clause itself was induced by fraud or overreaching; 2) the forum selected in the clause is so unfair or inconvenient that a party, for all practical purposes, will be deprived of an opportunity to be heard; or 3) the clause violates a public policy of the jurisdiction.

*Patriot Commercial Leasing Co., Inc., supra* at 650.

¶ 10 In the present case, Appellees contend that the forum selection clause is unenforceable because the contracts were vitiated by pervasive fraud. However, the fraud in question clearly related to the entire transaction rather than the forum selection clause specifically. Hence, the clause itself cannot be invalidated. *Id.* In this connection, we must stress that we have full faith in the ability of the citizens of Pennsylvania to recognize and redress the misconduct involved in this case.

¶ 11 We also must conclude that Pennsylvania is not so unfair or inconvenient that for all practical purposes, Appellees herein will be deprived of an opportunity to be heard. Appellees do business in states that border Pennsylvania. Many of the Appellees-corporations are represented by the same attorney, and the validity of these seventeen contracts can be heard in the same proceeding. Thus, Appellees will actually be able to conserve assets by contesting the enforceability of the underlying contract in a combined venue with

fewer attorneys. Finally, the amounts in question are not so minimal that Appellees will be forced to default rather than litigate on the merits. *Cf. Churchill Corp. v. Third Century, Inc.*, 396 Pa.Super. 314, 578 A.2d 532 (1990); *Morgan Trailer Manufacturing Co. v. Hydraroll, Ltd.*, 759 A.2d 926 (Pa.Super.2000). The Pennsylvania forum will be able to do substantial justice to this matter.

■ ¶ 12 Finally, we are unable to discern a public policy in Pennsylvania that would be violated by enforcement of the clause. To the contrary, it is settled Pennsylvania law that a party is bound by clear and unambiguous language contained in a contract. *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983) ("Where . . . the language of the contract is clear and unambiguous, a court is required to give effect to that language"); *accord De Lage Landen Financial Services, Inc. v. M.B. Management Co.*, 888 A.2d 895 (Pa.Super.2005).

■ ¶ 13 We also disagree with the contention that the clause herein is ambiguous because it fails to give reasonable notice as to the location of any potential action instituted to enforce the lease. The clause states that "all legal actions relating to this lease shall be venued exclusively in a state or federal court located within" the State of the assignee, "such court to be chosen at the Rentor or Rentor's assignee's sole option." It can be readily understood by anyone reading it to mean that the party to the contract has consented to have a breach of contract action pertaining to the lease brought in any state. The naming of Pennsylvania is not essential. Indeed, in rejecting the identical argument, the Seventh Circuit Court of Appeals noted that "naming names is not the only method of dispelling ambiguity. . . . [T]he forum selection clause designates the state of suit

unequivocally: it is the headquarters state of either NorVergence or, if the contract has been assigned, of the assignee." *IFC Credit Corp. v. Aliano Bros. General Contractors, Inc.*, 437 F.3d at 612. Appellees thus consented to the initiation of an action in any state.

■ ¶ 14 An argument is also made that the clause should be interpreted under New Jersey law if a Pennsylvania choice-of-law analysis is employed and that under New Jersey law, floating forum selection clauses are not enforceable. *Copelco Capital, Inc. v. Shapiro*, 331 N.J.Super. 1, 750 A.2d 773 (N.J.Super.A.D.2000). However, the agreement provides, "This agreement shall be governed by [and] construed . . . in accordance with, . . . if this Lease is assigned by Rentor, the State in which the assignee's principal offices are located, without regard to such State's choice of law considerations[.]" Thus, the document clearly and unambiguously calls for the application of Pennsylvania law and not an application of Pennsylvania's choice-of-law analysis. Under Pennsylvania law, we find the floating forum selection clause is enforceable. It confers jurisdiction over Appellees in Pennsylvania by virtue of the fact that they are signatories to the clause, thus consenting to jurisdiction in Pennsylvania regardless of their contacts with this state.

¶ 15 Order reversed. Case remanded. Jurisdiction relinquished.