FIFTH DIVISION
December 7, 2007

Nos. 1-05-1310, 05-1316, 05-1459, 05-1465, 05-1466, 05-1489, 05-1490, 05-1491, 05-1612, 05-2245, 05-2246, 05-2247, 05-2248, 05-2249, 05-2250, 05-2251, 05-2252 & 05-3751 (cons.)

| | | |
|---|---|---|
| IFC CREDIT CORPORATION, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 04 L 13472 |
| | ) | (1-05-1310) |
| RIEKER SHOE CORPORATION, | ) | |
| | ) | Honorable |
| Defendant-Appellee. | ) | Paddy H. McNamara, |
| | ) | Judge Presiding. |

| | | |
|---|---|---|
| IFC CREDIT CORPORATION, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 04 M3 2654 |
| | ) | (1-05-1316) |
| THOMAS PRINTING, INC., and MICHAEL | ) | |
| THOMPSON, | ) | Honorable |
| | ) | Daniel M. Locallo, |
| Defendants-Appellees. | ) | Judge Presiding. |

| | | |
|---|---|---|
| IFC CREDIT CORPORATION, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | Nos. 04 M3 2649, 04 M3 |
| | ) | 2661, 04 M3 2670, 04 M3 |
| MAIN STREET MORTGAGE OF CENTRAL FLORIDA, | ) | 2648, 04 M3 2647, 04 M3 |
| INC., and LINDA SHOUP; POLY TECH INDUSTRIES, | ) | 2674 |
| INC.; W & S HUBBLE, INC., and WILLIAM HUBBLE; | ) | (1-05-1459, 1465, 1466, |
| RESTAURANT GRAPHICS, INC., and THOMAS | ) | 1489, 1490, 1491) |
| STAVRAKIS; MODESTO STEEL COMPANY, INC.; | ) | |
| and J & W CYCLES, INC., and NANCY JONES, | ) | Honorable |
| | ) | James Ryan, |
| Defendants-Appellees. | ) | Judge Presiding. |

Nos. 1-05-1310 *et al.* (cons.)

| | | |
|---|---|---|
| IFC CREDIT CORPORATION, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 04 M3 2652 |
| | ) | (1-05-1612) |
| WOLCOTT BURKEHOLDER, d/b/a Productive | ) | |
| Solutions, | ) | Honorable |
| | ) | James Ryan, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

| | | |
|---|---|---|
| IFC CREDIT CORPORATION, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | Nos. 04 M3 2658, 04 M3 |
| | ) | 2646, 04 M3 2665, 04 M3 |
| COLONIAL DISTRIBUTORS, INC.; SOUTH COAST | ) | 2655, 04 M3 2667, 04 M3 |
| DENTAL LABORATORY, INC., and RICHARD HALE | ) | 2668, 04 M3 2673, 04 M3 |
| II; A.M. LASALLE ELECTRIC, INC.; JEREMY | ) | 2660 |
| NORMAND, d/b/a State Farm Insurance; | ) | (1-05-2245 to -2252) |
| BI-STATE INDUSTRIES, INC., and JAMES DUNCAN; | ) | |
| D & R PACKAGING, INC., GREGORY RUSSELL and | ) | |
| JOSEPH RUSSELL; CORONET WINDOW COMPANY; | ) | |
| and REE'S CONTRACT SERVICE, INC. | ) | Honorable |
| | ) | James Ryan, |
| Defendants-Appellees. | ) | Judge Presiding. |

_____

| | | |
|---|---|---|
| IFC CREDIT CORPORATION, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 04 M3 2657 |
| | ) | (1-05-3751) |
| TERRY STRENG, d/b/a Mountain Insurance | ) | |
| Agency, | ) | Honorable |
| | ) | James Ryan, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

Nos. 1-05-1310 *et al.* (cons.)

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Plaintiff IFC Credit Corporation (IFC) appeals from orders of the circuit court that dismissed IFC's breach of contract claims against the numerous defendants due to lack of personal jurisdiction. IFC argues that the circuit court erred in refusing to enforce the forum selection clause in the contracts signed by defendants and assigned to IFC. Defendants argue, *inter alia*, that the forum selection provision was unreasonable and unenforceable because it permits jurisdiction over defendants in any state in the United States in which IFC or any other third-party assignee of the contract does business. Defendants also argue that the forum selection provision was broad, boilerplate language buried in the contracts and failed to give adequate notice to contracting parties of where they could expect to be required to appear in court. Furthermore, defendants argue that the clause is void because it was procured by fraud. For the reasons that follow, in this consolidated appeal, we conclude that the clause is enforceable under Illinois law and therefore reverse the judgments of the circuit court and remand these cases for further proceedings.

## I. MOTION TO STRIKE

After the parties completed briefing the issues in this appeal, IFC filed a motion to strike, complaining that certain defendants filed appendices with their appellate briefs that contained materials (decisions rendered by various jurisdictions) that were not included in the record on appeal. Specifically, the complained-of materials were: (1) <u>Federal Trade Comm'n v. NorVergence, Inc.</u>, No. 04-5414 (D.N.J. August 8, 2005); (2) <u>People v. NorVergence, Inc.</u>, No. 2004-CH-655 (Cir. Ct. Sangamon Co., May 6, 2005); (3) <u>IFC Credit Corp. v. Warner Robbins</u>

-3-

Nos. 1-05-1310 *et al.* (cons.)

Supply Co., No. 04 C 6093 (N.D. Ill. October 26, 2005); and (4) IFC Credit Corp. v. Magnetic Technologies, Ltd., No. 04-M2-2637 (Cir. Ct. Cook Co., November 8, 2005). IFC's motion to strike these materials was taken with the case.

We have considered IFC's contentions and defendants' responses and hereby deny IFC's motion to strike the materials. Because the unpublished judgments are in the public records of other courts and will aid this court in the efficient disposition of this consolidated appeal, we will take judicial notice of the materials. Metropolitan Life Insurance Co. v. American National Bank & Trust Co., 288 Ill. App. 3d 760, 764 (1997); Muller v. Zollar, 267 Ill. App. 3d 339, 341 (1994). We grant defendants' request pursuant to Supreme Court Rule 366(a)(3) (155 Ill. 2d R. 366) to supplement the record on appeal with the materials attached in the appendices.

## II. BACKGROUND

The forum selection clause in question has been the subject of nationwide litigation, including litigation by various states' attorneys general and the Federal Trade Commission (FTC). Briefly summarized, some of the allegations contained in those complaints alleged that, from 2002 to 2004, NorVergence, Inc. (NorVergence), a corporation based in New Jersey, purchased telecommunications services from common carriers and resold those services to small businesses. NorVergence allegedly represented that customers could save 30% on telephone, cellular and Internet services by leasing its Matrix equipment, which was merely a standard router or firewall device that could provide only minimal savings, if any, and was worth a fraction of its cost under the lease. NorVergence allegedly marketed its services as integrated, long-term packages and promised customers they would receive uninterrupted services for the full five-year lease term, but

Nos. 1-05-1310 *et al.* (cons.)

it did not have a sustainable business plan. NorVergence allegedly put customers through a rigorous application process and procured their signatures on a stack of forms. The fine print provisions of the equipment rental agreement purported to render the contracts noncancelable and to require consumers to pay the full amount for the five-year rental term regardless of any equipment failure, misrepresentation, failure to provide services, or dissatisfaction with the equipment for any reason. Despite representations that NorVergence would treat the numerous forms as a unified agreement under which NorVergence would provide services, it immediately sold or assigned the rental agreements to as many as 40 different finance companies.

On October 10, 2003, before defendants signed the contracts at issue here, NorVergence and IFC, a corporation with its principal place of business in Morton Grove, Illinois, entered into a master program agreement that governed the assignment of various equipment rental agreements from NorVergence to IFC. According to the master program agreement, when IFC agreed to purchase a rental agreement, NorVergence would assign to IFC all its rights, title and interest in the agreement and equipment, including all monies due and to become due, but none of NorVergence's obligations under the agreement. IFC Credit Corp. v. Magnetic Technologies, Ltd., 368 Ill. App. 3d 898, 899 (2006).

Defendants are 18 out-of-state businesses (and some of their owners or officers as personal guarantors) that entered into virtually identical equipment rental agreements with NorVergence for the use of the Matrix equipment. The signature or front page of the agreement set forth the amount of the monthly payment to be made to NorVergence and the rental term of 60 months. A provision above the section for the renter's signature stated:

Nos. 1-05-1310 *et al.* (cons.)

"You agree to all the terms and conditions shown above and [*sic*] the reverse side of this Rental, that those terms and conditions are a complete and exclusive statement of our agreement and that they may be modified only by written agreement between you and us. Terms or oral promises which are not contained in this written Rental may not be legally enforced. You also agree that the Equipment will not be used for personal, family or household purposes. You acknowledge receipt of a copy of this Rental. Your obligations to make all Rental Payments for the entire term are not subject to set off, with holding [*sic*] or deduction for any reason whatsoever.

\* \* \*

THIS RENTAL MAY NOT BE CANCELLED OR TERMINATED EARLY."

The back page of the agreement set forth various contract provisions in 21 unnumbered block paragraphs of small typeface. Those block paragraphs were formatted into two columns. Among those provisions were the following:

"**ASSIGNMENT: YOU MAY NOT SELL, PLEDGE, TRANSFER, ASSIGN OR SUBRENT THE EQUIPMENT OR THIS RENTAL.** We may sell, assign or transfer all or any part of this Rental and/or the Equipment without notifying you. The new owner will have the same rights that we have, but not our obligations. You agree you will not assert against the new owner any claims, defenses or set-offs that you may have against us.

* * *

> **APPLICABLE LAW**: *** This agreement shall be governed by, construed and enforced in accordance with the laws of the State in which Rentor's principal offices are located or, if this Lease is assigned by Rentor, the State in which the assignee's principal offices are located, without regard to such State's choice of law considerations and all legal actions relating to this Lease shall be venued exclusively in a state or federal court located within that State, such court to be chosen at Rentor or Rentor's assignee's sole option. You hereby waive right to a trial by jury in any lawsuit in any way relating to this rental."

From the copies of the contract contained in the record on review, it is not clear whether more of the above-cited language was also in boldfaced type. The back page also had a small box near the bottom right corner that renters were asked to "initial if submitting via facsimile."

At the time the leases were entered into, NorVergence's principal office was located in New Jersey. NorVergence assigned the contracts to IFC shortly after defendants signed the contracts. IFC's principal office was located in Morton Grove, Illinois.

In June of 2004, NorVergence involuntarily entered bankruptcy. While those bankruptcy proceedings were pending, in November 2004, the FTC filed a complaint against NorVergence in the United States District Court for the District of New Jersey. The FTC's complaint accused NorVergence of various unfair and deceptive acts in violation of section 45(a) of the Federal Trade Commission Act (15 U.S.C. §45(a) (2000)). Neither NorVergence nor the trustee in bankruptcy defended the lawsuit, and a default judgment was entered by the United States District

Nos. 1-05-1310 *et al.* (cons.)

Court on June 29, 2005. In that judgment, the district court found, *inter alia*, that the NorVergence rental agreements assigned after the bankruptcy court rejected those agreements were void and unenforceable. The district court also found that the rental agreements in which NorVergence still retained any residual rights were void and unenforceable. See Federal Trade Comm'n, No. 04-5414 (D.N.J. August 8, 2005).

Also in November 2004, the Illinois Attorney General filed a complaint for injunctive and other relief against NorVergence and its president Peter Salzano. That complaint accused NorVergence and Salzano of various unfair and deceptive representations and acts in violation of section 2 of the Consumer Fraud and Deceptive Business Practices Act (Act) (815 ILCS 505/2 (West 2004)). On May 6, 2005, a default judgment was entered in that case, declaring all of NorVergence's rental agreements void *ab initio* and unenforceable. People v. NorVergence, Inc., No. 2004-CH-655 (Cir. Ct. Sangamon Co., May 6, 2005). IFC was not a party to the action brought by either the FTC or the Illinois Attorney General.

The matters before us began in August and December of 2004, when IFC sued each defendant separately in the circuit court of Cook County for breach of contract. IFC alleged that defendants failed and refused to pay the 60 monthly rental payments in the manner promised under the equipment rental agreement. IFC sought recovery of all past-due payments and all payments to become due pursuant to the 60-month rental term. The recovery IFC sought under the agreements from the various defendants here ranged from $8,040 to $72,836.02. Defendants individually filed motions to dismiss for lack of personal jurisdiction, pursuant to either section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2004)) or

Nos. 1-05-1310 *et al.* (cons.)

section 2-301 of the Code (735 ILCS 5/2-301 (West 2004)). Defendants argued, *inter alia*, that the forum selection clause was not enforceable because (1) it failed to sufficiently specify a forum where litigation would take place; (2) it was unreasonable where defendants and their witnesses resided outside Illinois, the contract was executed and services were to be provided outside Illinois, defendants would suffer serious inconvenience if forced to litigate in Illinois, and the boilerplate language forum selection clause was not equally bargained for; and (3) the rental agreement was the product of fraud.

The circuit court, which consolidated some of the cases, granted defendants' motions to dismiss. The circuit court held the clause was invalid because it was not sufficiently clear and specific where the contract did not actually select a particular forum in advance but, rather, the proper forum was contingent upon the location of an unnamed assignee's principal office. IFC appealed, and this court has consolidated the 18 cases.

### III.  ANALYSIS

As noted above, the NorVergence leases have been the subject of litigation throughout the United States, and there is a split of authority regarding the enforceability of the forum selection clause. The forum selection clause was enforced in IFC Credit Corp. v. Aliano Brothers General Contractors, Inc., 437 F.3d 606 (7th Cir. 2006) (overruling several district court cases that found the clause invalid), Edge Telecom, Inc. v. Sterling Bank, 143 P.3d 1155 (Colo. App. 2006), OFC Capital v. Colonial Distributors, Inc., 285 Ga. App. 815, 648 S.E.2d 140 (2007) (disagreeing with an earlier Georgia appellate court's ruling that the clause was invalid due to fraud), Liberty Bank, F.S.B. v. Best Litho, Inc., 737 N.W.2d 312 (Iowa App. 2007); Susquehanna Patriot Commercial

Nos. 1-05-1310 *et al.* (cons.)

Leasing Co. v. Holper Industries, Inc., 928 A.2d 278 (Pa. Super. 2007), and Studebaker-Worthington Leasing, Corp. v. New Concepts Realty, Inc., 14 Misc. 3d 1233(A), 836 N.Y.S.2d 503 (N.Y. Dist. 2007).  However, the forum selection clause was ruled invalid by Ohio's Supreme Court in Preferred Capital, Inc. v. Power Engineering Group, Inc., 112 Ohio St. 3d 429, 860 N.E.2d 741 (2007), by the Sixth Circuit in Preferred Capital, Inc. v. Sarasota Kennel Club, Inc., 489 F.3d 303 (6th Cir. 2007) (not enforcing the clause although it was valid under federal law because the Ohio Supreme Court's recent ruling controlled), and in one reviewing court in Georgia in SRH, Inc. v. IFC Credit Corp., 275 Ga. App. 18, 619 S.E.2d 744 (2005).  As instructive as all of these cases are, they are not binding on this court.  See Bowman v. American River Transportation Co., 217 Ill. 2d 75, 91-92 (2005); Ramette v. AT&T Corp., 351 Ill. App. 3d 73, 83 (2004).

In reviewing orders on motions to dismiss, we apply a *de novo* standard of review. Federal Insurance Co. v. St. Paul Fire & Marine Insurance Co., 271 Ill. App. 3d 1117 (1995). We conclude that defendants have not met their burden to show that enforcement of the forum selection clause would be unreasonable under the circumstances.

A forum selection clause in a contract is *prima facie* valid and should be enforced unless the opposing party shows that enforcement would be unreasonable under the circumstances. Calanca v. D&S Manufacturing Co., 157 Ill. App. 3d 85, 88 (1987), citing The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 32 L. Ed. 2d 513, 520, 92 S. Ct. 1907, 1913 (1972).  This court has stated that, "in order to hold a forum selection clause unenforceable, enforcement must contravene the strong public policy of the forum or the chosen forum must be '*seriously*

inconvenient for the trial of the action.' " (Emphasis in original.) Calanca, 157 Ill. App. 3d at 88, quoting The Bremen, 407 U.S. at 16, 32 L. Ed. 2d at 524, 92 S. Ct. at 1916. If both parties freely enter into an agreement contemplating such inconvenience should a dispute arise, then one party cannot successfully argue inconvenience as the reason to void the forum clause. Maher & Associates, Inc. v. Quality Cabinets, 267 Ill. App. 3d 69, 74-75 (1994). A forum selection agreement reached through arm's-length negotiation between experienced and sophisticated business people should be honored by them and enforced by the courts, absent some compelling and countervailing reason for not enforcing it. Calanca, 157 Ill. App. 3d at 88. However, a forum selection clause contained in boilerplate language indicates unequal bargaining power, and the significance of the provision is greatly reduced. Williams v. Illinois State Scholarship Comm'n, 139 Ill. 2d 24, 72 (1990).

To determine the reasonableness of a forum selection clause, courts should consider: (1) the law that governs the formation and construction of the contract; (2) the residency of the parties; (3) the place of execution and/or performance of the contract; (4) the location of the parties and their witnesses; (5) the inconvenience to the parties of any particular location; and (6) whether the clause was equally bargained for. Dace International, Inc. v. Apple Computer, Inc., 275 Ill. App. 3d 234, 238 (1995), citing Calanca, 157 Ill. App. 3d at 89.

We find that, after applying the factors set forth in Calanca, the forum selection clause is valid. The first factor favors IFC, because the clause provides that the law governing the agreement is the principal place of business of assignee IFC, or Illinois. The second factor is a draw. Although defendants' businesses are not located in Illinois, IFC's principal offices are

Nos. 1-05-1310 *et al.* (cons.)

located in Morton Grove, Illinois.

The third factor favors defendants. The record indicates that the agreements were executed, the equipment was to be installed, and services were to be provided in defendants' respective home states, which have some interest in resolving these contract disputes.

Although defendants contend the fourth factor favors them, most do not identify any potential witnesses whose testimony could not be procured or who would be seriously inconvenienced if the cases proceed in Illinois. Defendant Poly Tech Industries argues that it was fraudulently induced to enter the contract by Brook Batchelor, an agent or employee of the now-defunct NorVergence, who allegedly made numerous promises about high quality services and reduced costs and failed to disclose various contract provisions. Poly Tech Industries contends that Batchelor lives in Georgia. Even assuming, *arguendo*, that Batchelor is a necessary witness, Poly Tech Industries does not establish that his testimony could not be obtained through an evidence deposition.

Regarding the fifth factor, although litigation in their respective home states would clearly be more convenient for each defendant, mere inconvenience does not provide a basis for voiding a forum selection clause. Dace International, Inc., 275 Ill. App. 3d at 239-40. Defendants do not establish that litigating in Illinois would be so serious a hardship that they would have to abandon their defense.

Finally, the sixth factor does not favor defendants. Defendants claim their bargaining power was so inferior to NorVergence's that it would be unreasonable to enforce the clause against them. As defendants contend, it appears that the forum selection clause was boilerplate

-12-

Nos. 1-05-1310 *et al.* (cons.)

language in the preprinted agreement and the parties did not engage in any negotiation over those terms. Nevertheless, the fact that they did not object to or attempt to negotiate the clause is no reason to invalidate it. They were business entities as opposed to ordinary consumers, and this court is not persuaded that they were in need of protection when contracting for business services. Most of the defendants are corporations, a business form that suggests a certain level of sophistication. Moreover, the clause was not hidden in the contract simply because it was in small print on the back of the agreement. Although defendants may not have read the terms on the back of the agreement, a provision on the front page above their signatures referenced the conditions on the reverse side, and they initialed the back page.[1] Defendants have not shown that they were inexperienced in business matters, and the few facts we have about them suggest they were on a level playing field in terms of negotiating with NorVergence.

We conclude that the forum selection clause is reasonable. Defendants, however, attack the validity of the clause on the additional grounds of lack of specificity, violation of Illinois public policy, and procurement by fraud.

A. Unspecified Forum

Defendants argue that the forum selection clause is unenforceable because it does not sufficiently designate a particular forum but, rather, is a floating forum provision that is contingent on the location of the principal offices of NorVergence or any potential unnamed assignee. Defendants cite Whirlpool Corp. v. Certain Underwriters at Lloyd's London, 278 Ill. App. 3d

---

[1] Defendants D & R Packaging, Inc., Gregory Russell and Joseph Russell dispute this fact, and we address their argument below.

-13-

Nos. 1-05-1310 *et al.* (cons.)

175, 180 (1996), for the proposition that "[g]ood policy dictates that a true forum selection clause should be clear and specific" because parties who contract to try their case in a specific forum could be giving up important rights and the clause seeks to bind a state to try a case it otherwise might not want.

Whirlpool, however, does not assist defendants' arguments in the instant case. The mandatory language of the forum selection clause at issue here is not similar to the permissive language of the service of suit clause analyzed in Whirlpool, which merely stated that the defendant, located in London, England, would submit to the jurisdiction of any court of competent jurisdiction within the United States. When the Michigan-based plaintiff filed suit in Illinois, the defendant argued that agreeing to submit to the jurisdiction of the Illinois courts did not preclude defendant from arguing that the forum plaintiff chose was inconvenient. This court held, *inter alia*, that the defendant was not foreclosed from raising its *forum non conveniens* argument because the wording of the clause was clearly permissive and contained no mandatory language binding the parties to a particular forum. Whirlpool Corp., 278 Ill. App. 3d at 179-80.

Here, in contrast, mandatory language provides:

"This agreement shall be governed by *** the laws of the State in which Rentor's principal offices are located or, if this Lease is assigned by Rentor, the State in which the assignee's principal offices are located *** and all legal actions relating to this Lease shall be venued exclusively in a state or federal court located within that State, such court to be chosen at Rentor or Rentor's assignee's sole option."

-14-

This mandatory language binds defendants to a particular forum, *i.e.*, state or federal courts where NorVergence's or an assignee's principal offices are located. Moreover, a prior paragraph in the contract informed defendants that NorVergence could sell, assign or transfer the rental agreement and equipment without notifying defendants. We do not read Whirlpool to require a forum selection clause to designate a forum by name.

We also do not find the clause here unfair or unreasonable simply because the proper venue may change depending on the location of the principal office of the rentor or its assignee. There are legitimate business reasons for this type of forum selection clause, which facilitates the marketability of commercial paper because financial institutions can depend on selling it freely. Furthermore, the clause put defendants, who are business entities, on notice at the time of contracting that they were assuming the risk of litigating in a less convenient forum. When they signed the contracts, defendants had notice that any litigation would take place in New Jersey, where NorVergence's principal offices were located. Defendants also had notice that the location of the forum could change if NorVergence moved or assigned the contracts. Despite this flexibility, the assignee cannot randomly select any forum within the United States, but must litigate any legal dispute in the state where its principal offices are located. We find that this forum selection clause is clear and specific and its contingent nature due to the provisions concerning assignment does not render it unfair or unreasonable.

## B. Public Policy

The Ohio Supreme Court found this same forum selection clause invalid, holding that it violated Ohio's strong public policy against requiring individuals to appear in foreign jurisdictions

Nos. 1-05-1310 *et al.* (cons.)

without their knowing waiver of personal jurisdiction. <u>Preferred Capital, Inc.</u>, 112 Ohio St. 3d at 434, 860 N.E.2d at 746. The Ohio court noted that NorVergence had already entered into a master program agreement with the assignee but did not disclose that information to the defendant lessees. Based on the superior knowledge and position of NorVergence and the assignee in comparison to the defendant lessees, the Ohio court concluded that the defendant lessees were not fully apprised of the potential for a truly floating forum. The Ohio court held that when one party to a floating forum clause possesses undisclosed information of its intent to assign almost immediately to a company in a foreign jurisdiction, the clause is unreasonable and against Ohio public policy absent a clear showing that the other party knowingly waived personal jurisdiction and assented to litigate in any forum. <u>Preferred Capital, Inc.</u>, 112 Ohio St. 3d at 434, 860 N.E.2d at 746.

Similarly, defendants here argue that enforcement of the clause violates the public policy behind Illinois's general venue statute to protect against "ridiculous long-distance forum abuse, and the unfair burdening of a forum not connected to the litigation." <u>Williams</u>, 139 Ill. 2d at 72; see also <u>Martin-Trigona v. Roderick</u>, 29 Ill. App. 3d 553, 555 (1975) (holding a venue waiver provision was "void as against public policy," where the Illinois venue statute intended to protect a defendant from being sued in an oppressive and costly action in a county arbitrarily selected by a plaintiff, wherein the defendant did not reside or in which no part of the transaction occurred which gave rise to the cause of action).

We do not find the reasoning of the Ohio court persuasive, and defendants' reliance on <u>Williams</u> and <u>Martin-Trigona</u> is misplaced.

-16-

The contract terms explicitly permitted NorVergence to assign the contract without notifying defendants, and that provision is not rendered unreasonable by the immediacy of the assignment or the master program agreement between NorVergence and IFC. There are valid business reasons for these assignment and forum selection provisions–they reflect the modern-day reality of the leasing industry, where negotiable paper involving leasing equipment is bought and sold with regularity and it often is not known at the time of the initial transaction whether it will be sold and to whom. See Preferred Capital, Inc., 112 Ohio St. 3d at 435-36, 860 N.E.2d at 748 (Stratton, J., dissenting, joined by Lanzinger, J.) (adopting the reasoning of the United State Court of Appeals for the Seventh Circuit in IFC Credit Corp., 437 F.3d 606). The contract language was plain, unambiguous and available in the original contract for these business entities to read and understand. Requiring some further disclosure of the final assignee before acknowledging defendants' waiver of personal jurisdiction is not warranted in this context among business entities.

Neither Williams nor Martin-Trigona assists defendants' argument that the forum selection clause here violates Illinois public policy. In Williams, our supreme court clarified that the holding of the Martin-Trigona court did not turn on whether the semantic focus of the clause was a venue waiver or a true forum selection clause, but on the effect the clause had on the parties in light of the public policy behind the general venue statute to protect against "ridiculous long-distance forum abuse, and the unfair burdening of a forum not connected to the litigation." Williams, 139 Ill. 2d at 71-72. That statement of public policy, however, occurred in dramatically different circumstances from those of our case. Specifically, in Martin-Trigona, 29 Ill. App. 3d at

555-56, this court voided a venue waiver provision in a lease when a landlord tried to sue in Cook County, Illinois, to recover rent from the defendants who had rented an apartment in Champaign, Illinois. In <u>Williams</u>, our supreme court concluded that forum selection clauses in guaranteed student loan agreements were invalid, noting that the contracts amounted to adhesion contracts because the students "were in a disparate bargaining position, and, if they wanted the loan, were forced to 'take it or leave it.' " <u>Williams</u>, 139 Ill. 2d at 72. Moreover, with the contractual clause being embedded in a boilerplate agreement, its significance was "greatly reduced because of the inequality in the parties' bargaining power." <u>Williams</u>, 139 Ill. 2d at 72.

Defendants here are not similarly situated to the indigent students in <u>Williams</u> or apartment renters in <u>Martin-Trigona</u>, who had to choose between signing an agreement and forgoing a student loan or a home. The courts ruled that forcing the students or renters to litigate in a distant forum would have deprived them of their day in court. <u>Williams</u>, 139 Ill. 2d at 72; <u>Martin-Trigona</u>, 29 Ill. App. 3d at 556. Here, in contrast, defendants were business entities. If they did not like NorVergence's contract terms, they could have chosen to lease telecommunications equipment elsewhere or negotiated a modification of the terms of the contract.

Defendants contend that because they were unsophisticated about telecommunications and the leasing industry, they were like ordinary consumers in small transactions in the marketplace and, thus, entitled to some leniency under Illinois law concerning the enforcement of forum selection clauses. The First District has consistently enforced forum selection agreements between experienced business people. See <u>Aon Corp. v. Utley</u>, 371 Ill. App. 3d 562, 570 (2006) (where a California employee of a corporation headquartered in Illinois tried to avoid litigation in

Nos. 1-05-1310 *et al.* (cons.)

Illinois concerning her alleged breach of contract); Dace International, Inc., 275 Ill. App. 3d at 241 (where an Illinois computer sales consultant firm tried to sue a California computer manufacturer in Illinois for breach of contract); Calanca, 157 Ill. App. 3d at 88 (where an Illinois salesman tried to sue his former employer, a Wisconsin corporation, in Illinois for breach of contract to obtain commissions owed him). Support for this disparate treatment of consumers and business entities is found in the Uniform Commercial Code; Leases (UCC-Leases), which defines a consumer lease as one made to "a lessee who is an individual and who takes under the lease primarily for a personal, family, or household purpose." 810 ILCS 5/2A-103(1)(e) (West 2006). Furthermore, section 2A-106 of the UCC-Leases limits the power of parties to *consumer* leases to choose an applicable law or judicial forum. 810 ILCS 5/2A-106 (West 2006). Specifically, section 2A-106 renders unenforceable agreements where the law chosen is that of a jurisdiction other than where the lessee resides, or where the judicial forum chosen would not otherwise have jurisdiction over the lessee. 810 ILCS 5/2A-106 (West 2006).

The Second District, however, made an exception and refused to enforce a forum selection clause when an Illinois leasing company tried to sue a California certified public accountant (CPA) in small claims court in Illinois for $3,810.91 owed for the rental of mailing equipment. Mellon First United Leasing v. Hansen, 301 Ill. App. 3d 1041 (1998). The court concluded that the forum selection clause was not negotiated at arm's length between experienced business persons of the same stature but, rather, was part of boilerplate language in small print on the back of a preprinted form and, thus, more like an adhesion contract. Mellon First United Leasing, 301 Ill. App. 3d at 1046. The court also concluded that the CPA was more akin to an

ordinary consumer involved in a small transaction than a sophisticated businessperson because she was engaged in a newly organized proprietary business, she was not in the office equipment business, and there was no indication that she had any such expertise regarding the leased equipment. Moreover, when she was negotiating the lease with the original California vendor, she had no reason to believe–before she signed the lease terms–that she would be dealing with an Illinois corporation if a legal dispute arose. Mellon First United Leasing, 301 Ill. App. 3d at 1046.

Defendants here urge us to follow Mellon, but the reasoning of that case is not persuasive and the distinctions it sought to draw are ambiguous. The difficulty in applying Mellon with any consistency is particularly evident in this case where the 18 defendants are all business entities but of varying degrees of experience, size and sophistication. For example, defendant Wolcott Burkeholder, d/b/a Productive Solutions, is self-employed and provides services to another business that supplies custom equipment and engineering services mainly in the foundry industry. At the other end of the business sophistication spectrum is defendant Ree's Contract Service, Inc., which IFC contends is a federal government contractor that recruits, hires and trains retired police and military personnel for security detail, employs about 450 employees, and earned over $25 million in revenue in 2003. Mellon has limited practical application, and we are not inclined to fashion some type of business-sophistication standard out of nebulous factors like small, newly minted businesses or a lack of expertise concerning the particular equipment or service leased.

Instead of Mellon, we follow Dace International, Inc., which held business entities to their contractual bargains, but clarified that Illinois courts have not accepted the federal law trend of enforcing forum selection clauses in contracts involving unsophisticated consumers in small

Nos. 1-05-1310 *et al.* (cons.)

transactions in the marketplace without any real opportunity to consider the acceptance of a forum selection clause. See <u>Dace International, Inc.</u>, 275 Ill. App. 3d at 241, discussing <u>Carnival Cruise Lines, Inc. v. Shute</u>, 499 U.S. 585, 113 L. Ed. 2d 622, 111 S. Ct. 1522 (1991). We reject defendants' argument that their bargaining power was so inferior to NorVergence's that it would be unreasonable to enforce the forum selection clause against them.

C. Fraud

Defendants also contend that the forum selection clause is unenforceable because the entire agreement between defendants and NorVergence is tainted with fraud and is void *ab initio*. Defendants point to the numerous actions commenced by various states' attorneys general and the FTC and certain default judgments rendered in those actions. This court, however, has already ruled that assignee IFC was not in privity with NorVergence for purposes of *res judicata*. <u>IFC Credit Corp.</u>, 368 Ill. App. 3d at 901. Moreover, defendants' general allegations of fraud directed at NorVergence are not sufficient to invalidate the provisions of the forum selection clause. In order to invalidate the clause on the ground of fraud and overreaching, the fraud alleged must be specific to the forum selection clause itself. <u>Scherk v. Alberto-Culver Co.</u>, 417 U.S. 506, 519 n.14, 41 L. Ed. 2d 270, 281 n.14, 94 S. Ct. 2449, 2457 n.14 (1974); <u>Rouse Woodstock, Inc. v. Surety Federal Savings & Loan Ass'n</u>, 630 F. Supp. 1004, 1009 (N.D. Ill. 1986).

We also reject defendants' argument that the forum selection clause was procured by fraud and overreaching because it was buried in the contract. Although the typeface of the clause was small, it was legible and of the same size print as the other contract terms on the back page of the agreement. Moreover, above the signature line on the front page of the agreement, is the

sentence "You agree to all the terms and conditions shown above and [*sic*] the reverse side of this Rental ***." Defendants complain that NorVergence's salespeople did not mention the forum selection clause, but defendants are business entities and they had the opportunity to read the forum selection provision before signing and initialing the document. Consequently, they are presumed to have read, understood, and agreed to be bound by its terms. Dace International, Inc., 275 Ill. App. 3d at 240. Furthermore, there is a valid business reason for including a floating forum clause in a contract; such provisions make it easier for the lessor to sell its interest in the lease payments to a finance company. IFC Credit Corp., 437 F.3d at 612-13; Preferred Capital, Inc., 112 Ohio St. 3d at 432, 860 N.E.2d at 745.

### D. Choice-of-Law Clause

Citing the Restatement (Second) of Conflict of Laws, defendant Poly Tech Industries, Inc., argues that the forum selection clause should be construed under New Jersey law because the Illinois choice-of-law rules should apply, and that under New Jersey law, floating forum selection clauses are not enforceable (Copelco Capital, Inc. v. Shapiro, 331 N.J. Super. 1, 750 A.2d 773 (N.J. Super. App. Div. 2000)). We disagree.

The agreement provides, in pertinent part, that it "shall be governed by, construed and enforced in accordance with the laws of *** the State in which the assignee's principal offices are located, without regard to such State's choice of law considerations." The agreement clearly and unambiguously calls for the application of Illinois law. Under Illinois law, we have found the forum selection clause enforceable.

Nos. 1-05-1310 *et al.* (cons.)

### E. Defendant D & R Packaging, Inc.

Finally, defendants D & R Packaging, Inc., Gregory Russell and Joseph Russell argue that they never consented to jurisdiction by virtue of a forum selection clause, contending that the lease they saw and signed contained only the front or signature page, they never initialed any second page, and the lease attached by IFC to its complaint did not contain a second page.

We reject defendants' argument. According to the provision just above their signature on the lease, they agreed to all the terms and conditions shown on the reverse side of the lease. They also signed the delivery and acceptance certificate, wherein they acknowledged that they had reviewed and understood all the terms and conditions of the lease.

### IV. CONCLUSION

We hold that the circuit court erred by granting defendants' motions to dismiss and refusing to enforce the forum selection clause. We reverse the orders of the circuit court and remand these causes for proceedings consistent with this opinion.

Reversed and remanded with directions.

TULLY and GALLAGHER, JJ., concur.