NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 2, 2008[*]
Decided April 2, 2008

**Before**

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

Nos. 07-1569, 07-1612 & 07-1651

| | |
|---|---|
| GOOGLE, INC., | Appeals from the United States District |
|     *Plaintiff-Appellee*, | Court for the Northern District of Illinois, |
| | Eastern Division. |
|     *v.* | |
| | No. 07 C 0385 |
| CENTRAL MFG. INC. and STEALTH | |
| INDUSTRIES, INC., | Virginia M. Kendall, |
|     *Defendants*. | *Judge*. |

APPEALS OF: LEO D. STOLLER,
    *Applicant in Intervention-Appellant*.

**O R D E R**

Leo Stoller is a familiar litigant, to say the least. As we have previously remarked, litigation is central to his business strategy: he claims a superior right to countless

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeals are submitted on the briefs and record. FED. R. APP. P. 34(a)(2).

trademarks and then seeks to thwart genuine users from registering their marks or threatens litigation if he is not paid a "licensing fee." *See, e.g., Central Manufacturing, Incorporated v. Brett*, 492 F.3d 876, 880 (7th Cir. 2007); *S Indus., Inc. v. Space-Age Techs.*, 116 Fed. App'x 752 (7th Cir. 2004); *S Indus., Inc. v. Centra 2000, Inc.*, 249 F.3d 625 (7th Cir. 2001). In this case when Stoller targeted big-gun Google, Inc., and tried to lay claim to its GOOGLE mark, the internet giant went on the offensive. Apparently, though, Google thought its odds would be better by suing, not Stoller, but two "corporations" that even Google surmised were nothing but alter egos of Stoller. And when Stoller sought to intervene as a defendant, Google successfully prevailed upon the district court to keep him out. Google now has a final judgment—against whom we cannot say—but we agree with Stoller that the judgment must be vacated and the case remanded for further proceedings.

I.

After losing several trademark cases and being ordered to pay attorneys' fees and costs, Stoller filed for bankruptcy under Chapter 13 of the Bankruptcy Code in December 2005. In September 2006 the bankruptcy court converted the case to a Chapter 7 liquidation because it found that Stoller had acted in bad faith by not disclosing certain income and real-estate interests. In doing so, the bankruptcy court essentially concluded that "Central Mfg. Inc.," although nominally registered as a Delaware corporation, and "Stealth Industries, Inc." were assumed names for Stoller and "indistinguishable" from him. The court found that neither of these purported corporations maintained corporate books and records, that Stoller's personal funds were commingled with their funds, and that Stoller referred to their assets as his own. Further, the court determined that "Central Manufacturing Company, Inc.,""Central Mfg. Co.," and "Rentamark" were also trade names used by Stoller to conduct individual business.

Meanwhile, just before he filed his Chapter 13 petition, Stoller had begun his quest against Google. We set out an abbreviated version of events as Google recounts them. In November 2005, Stoller asked the Trademark Trial and Appeal Board, a part of the United States Patent and Trademark Office, to extend the deadline for potential opponents to contest Google's pending application to register its GOOGLE mark. *See* 37 C.F.R. § 2.102. Stoller billed himself as "president and CEO" of "Central Mfg. Co. (Inc.)," a name that Google describes as an "alias" of "Central Mfg. Inc." Two days later, on November 29, Stoller wrote Google on letterhead identifying himself as "Google Brand Products & Services." Stoller claimed that he had been using the GOOGLE mark for many years and threatened to "cloud" Google's registration application with a lawsuit unless the company promptly abandoned its application or else agreed to pay him royalties. After that, from February 2006 through at least January 2007, Stoller sent letters, e-mails, and faxes to Google and its attorneys pressuring them to pay him off and threatening to publicize his claim of a

superior right to the GOOGLE mark in order to depress Google's stock price. In many of these communications Stoller identified himself as speaking for "Rentamark," which Google describes as an "alias" of "Stealth Industries, Inc." On his website, Rentamark.com, Stoller also posted reports that "Central Mfg. Co.," yet another "alias" of "Central Mfg. Inc.," had initiated action to cancel Google's registration of its mark and touted that he prevails in 90% of his "police actions" against infringers.

In August 2006, with Stoller's harrassment continuing unabated, Google approached the bankruptcy judge having jurisdiction over the Chapter 13 case and asked the court to declare that the bankruptcy stay, see 11 U.S.C. § 362, would not preclude its proposed lawsuit against Stoller, "Central Mfg. Inc.," and "Stealth Industries, Inc." Google represented to the bankruptcy court that its proposed claims had not accrued until after the Chapter 13 petition had been filed, and thus, according to Google, were outside the scope of the bankruptcy proceeding. In the alternative, Google proposed that the stay be modified so that it could proceed with its suit. Google's motion was still pending, however, when the case was converted to a Chapter 7 liquidation a few weeks later. The Chapter 7 trustee, who was appointed only after the bankruptcy court had found that "Central Mfg. Inc." and "Stealth Industries, Inc." were nothing but alter egos for Stoller, promptly sought and received approval to act on behalf of these "corporations" in his "capacity as the sole shareholder." Over the next several months, with Google's motion concerning the bankruptcy stay in limbo, Google and the Chapter 7 trustee negotiated an agreement committing "Central Mfg. Inc." and "Stealth Industries, Inc." to admit that they had violated the Lanham Act through false advertising, see 15 U.S.C. § 1125(a)(1)(B); engaged in racketeering , see 18 U.S.C. §§ 1962, 1964(c); and engaged in unfair competition under state law. These two "corporations" would consent to a permanent injunction barring "their officers, directors, principals, agents, servants, employees, successors, assigns, parents, subsidiaries and affiliates and those acting on their behalf or in concert or participation with them"—for all practical purposes, Stoller—from further harassing Google. Significantly, the trustee, on behalf of "Central Mfg. Inc.," agreed to withdraw two matters concerning Google that Stoller had filed with the PTO or the Trademark Trial and Appeal Board using the names "Central Mfg. Inc." or "Central Mfg. Co. (Inc.)." In return Google would release Stoller's bankruptcy estate and the trustee, but not Stoller, from all damages arising from its proposed claims. The trustee and Google apparently encouraged Stoller to join this agreement, but he declined.

In December 2006 the Chapter 7 trustee asked the bankruptcy court for approval to finalize this proposed agreement. The court granted authorization on December 5 and modified the bankruptcy stay, "to the extent applicable," so that the trustee could proceed. Then on January 18, 2007, the bankruptcy court took up Google's motion for relief from the stay, which had been pending since August. The court authorized Google to file the suit

"described in the Motion" but directed the company to seek leave of court before attempting to collect any monetary judgment obtained against Stoller personally. One day later Google filed suit in the district court against "Central Mfg. Inc." and "Stealth Industries, Inc." but not Stoller or the Chapter 7 trustee. The complaint replicates the suit Google "described in the Motion" for relief from the stay except that Stoller had been dropped as the lead defendant and all references to him throughout the complaint as "Defendant Stoller" had been replaced with "Stoller." On almost every one of its 25 pages the complaint links Stoller with the two "corporate" defendants or what Google identifies as their assumed names: "Central Mfg. Co.," "Central Mfg. Co. (Inc.)," "Central Manufacturing Company, Inc.," "Central Mfg. Co. of Illinois," "Rentamark," and "Rentamark.com."

Stoller moved to intervene, *see* Fed. R. Civ. P. 24(a), (b), arguing that, as the former sole shareholder of the "corporate" defendants and the person Google alleged was responsible for their unlawful conduct, he had a substantial interest in the lawsuit. And, he continued, given the bankruptcy court's finding that individually he was "indistinguishable" from "Central Mfg. Inc." and "Stealth Industries, Inc.," his interest would be impaired and not adequately represented unless he was permitted to intervene.[1] The bankruptcy court, in denying Stoller's objection to approval of the Chapter 7 trustee's agreement with Google, had told him that he should move to intervene when Google filed the lawsuit contemplated by that agreement, but both the trustee and Google opposed his motion.

The district court denied Stoller's motion. The court concluded that Stoller could not intervene as of right because, according to the court, he did not have a "direct, significant legally protectable interest" in the suit. The court reasoned that Stoller was acting as president of the "corporate" defendants when he undertook the actions described in the complaint, and that as a result of the bankruptcy case he no longer held a stake in those businesses. The court also rejected Stoller's alternative argument for permissive intervention, reasoning that allowing him to get involved "would frustrate the parties' efforts to resolve this matter by settlement." Three days later the district court approved the settlement agreed to by Google and the trustee before the suit was filed and entered the permanent injunction contemplated by that agreement.

II.

---

[1] Stoller filed two motions to intervene, but for purposes here we treat them as one.

We have consolidated Stoller's appeals from the denial of his motion to intervene and from the final judgment in the lawsuit. *See In the Matter of Synthroid Marketing Litigation*, 264 F.3d 712, 715-16 (7th Cir. 2001). On appeal he essentially argues that the district court erred in keeping him out of the lawsuit because he and the "corporate" defendants are indistinguishable and thus he is the real party in interest. He also contends that the Chapter 7 trustee did not have authority to act on behalf of "Central Mfg. Inc." or "Stealth Industries, Inc." Google has filed a brief in defense of its judgment, but the trustee is not participating in these appeals.

Google and the trustee have both taken litigation positions that appear to us internally inconsistent. The premise of Google's lawsuit is that "Central Mfg. Inc." and "Stealth Industries, Inc." are shams that Stoller hides behind to extort legitimate enterprises, yet Google has named only those two "corporations" as defendants and has purposely kept Stoller out of the litigation. Google has not named the trustee as a defendant in Stoller's stead, so the corporate legitimacy of the two names that Google has sued is a significant issue. On the other hand, the trustee entered the bankruptcy case after the bankruptcy court had all but declared that "Central Mfg. Inc." and "Stealth Industries, Inc." never were anything but alter egos of Stoller in his individual capacity, but the trustee has assumed in dealing with Google that they are legal entities distinct from Stoller. So it is far from certain that Google has sued, or "won" a judgment against, anyone.

If the named defendants really are "wholly owned corporations" and not just trade names through which Stoller conducts business as an individual, then the stock became part of his bankruptcy estate. But taking control of a debtor's stock interest in a legitimate corporation typically means that a trustee "stands in the shoes of an ordinary shareholder." *In re Reeves*, 65 F.3d 670, 675 (8th Cir. 1995); *see Fowler v. Shadel*, 400 F.3d 1016, 1019 (7th Cir. 2005); *In re Brose*, 339 B.R. 708, 713 (Bankr. D. Minn. 2006); *In re Russell*, 121 B.R. 16, 17-18 (Bankr. W.D. Ark. 1990). Here, though, as far as the record shows, the Chapter 7 trustee no more conceptualized "Central Mfg. Inc." and "Stealth Industries, Inc." as real entities than did Stoller.

And presumably that is because the bankruptcy court had found both to be sham corporations that are "indistinguishable" from Stoller in his individual capacity. The absence of a separate identity is why the bankruptcy court authorized the trustee to disregard the "Inc." and deal with assets titled in either name as if they were held by Stoller directly. *See In re Eufaula Enters., Inc.*, 565 F.2d 1157, 1161 (10th Cir. 1977); *In re Mass*, 178 B.R. 626, 630 (M.D. Pa. 1995); *In re Baker*, 68 B.R. 360, 363-64 (Bankr. D. Or. 1986); *In re Crabtree*, 39 B.R. 718, 723-26 (Bankr. E.D. Tenn. 1984). Google, though, did not sue the trustee as the representative of the estate. *See* 11 U.S.C. § 323(a); *Bellini Imports, Ltd. v. Mason & Dixon Lines, Inc.*, 944 F.2d 199, (4th Cir. 1991). Instead Google sued what the bankruptcy

court had already found were names, not legal entities, which normally renders a suit void *ab initio*. *See Palen v. Daewoo Motor Co.*, 832 N.E.2d 173, 185 (Ill. App. Ct. 2005); *Bowers v. Du Page County Reg'l Bd. of Sch. Trs. Dist. No. 4*, 539 N.E.2d 246, 250 (Ill. App. Ct. 1989); *Tyler v. J.C. Penney Co.*, 496 N.E.2d 323, 327 (Ill. App. Ct. 1986). We find it hard to believe that Google actually wanted an injunction against defendants that do not exist unless it was trying to get at Stoller indirectly. The complaint is replete with allegations of what Stoller did under the guise of the named defendants, making it clear that Google really wanted to stop Stoller. This would seem to make Stoller the real defendant in this case.

But that is not all. As far as this record shows, Google has taken the position that its claims against Stoller and his "corporations" did not accrue until after the bankruptcy case commenced. If that is so, then the involvement of the Chapter 7 trustee is questionable. Claims that arise before a debtor files bankruptcy follow the estate. *See In re Witko*, 374 F.3d 1040, 1042 (11th Cir. 2004); *In re Polis*, 217 F.3d 899, 901-02 (7th Cir. 2000); *In re Forbes*, 215 B.R. 183, 190 (B.A.P. 8th Cir. 1997). The bankruptcy trustee, as representative of the estate, has the exclusive power to prosecute or defend them. *See* 11 U.S.C. § 323(b); *Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006); *Cable v. Ivy Tech State Coll.*, 200 F.3d 467, 472 (7th Cir. 1999); *In re New Era, Inc.*, 135 F.3d 1206, 1209 (7th Cir. 1998). But a cause of action arising after the bankruptcy estate is created belongs to the debtor, and normally the property of a Chapter 7 estate in a case that was converted from a Chapter 13 is determined by the debtor's interest at the time the Chapter 13 case was filed, not when it was converted. *See* 11 U.S.C. § 348(f)(1)(A); *In re Alexander*, 236 F.3d 431, 433 (8th Cir. 2000); *In re Stamm*, 222 F.3d 216 (5th Cir. 2000); *In re Rosenberg*, 303 B.R. 172, 176 (B.A.P. 8th Cir. 2004) (holding that Chapter 7 debtor's wrongful-termination claim against employer arose after failed Chapter 13 case was filed and thus was not property of Chapter 7 estate); *Farmer v. Taco Bell Corp.*, 242 B.R. 435, 436, 440 (W.D. Tenn. 1999) (holding that tort claim arising out of slip-and-fall that occurred after failed Chapter 13 case was filed but before conversion to Chapter 7 was not part of Chapter 7 estate and belonged to debtor).

Google alleges that it was November 2005 when Stoller first asked the Trademark Trial and Appeal Board to extend the deadline for receiving oppositions to Google's application to register its GOOGLE mark. And, according to Google, it was two days later when Stoller first communicated with the company about his supposed superior right to that mark. Both actions preceded Stoller's Chapter 13 filing by about a month. But in the motion asking the bankruptcy court to declare its proposed suit to be outside the scope of the stay, and again during a hearing on that motion, Google insisted that all of its claims arose postpetition. Google maintained that its Lanham Act claim, its racketeering claim, and its unfair-competition claim all accrued after December 2005. Indeed, the complaint carefully lays out a time line pointing out each letter, e-mail, and fax Google received from Stoller beginning in February 2006, and messages posted on Stoller's website that Google

claims are false, beginning in April 2006 and continuing until the complaint was filed in January 2007. So if Google is correct, then it would seem that its suit involves postpetition claims against Stoller, not his bankruptcy estate.

Accordingly, we vacate the final judgment issued on March 15, 2007, and remand for reconsideration of Stoller's motion to intervene. We will leave for the district court to resolve in the first instance whether "Central Mfg. Inc." and "Stealth Industries, Inc." are entities that are subject to suit, whether and under what circumstances Google's suit in its present form can proceed without Stoller if they are not, and whether any of the unlawful conduct Google alleges gave rise to a claim that even involves the Chapter 7 estate. We remind Stoller, however, that he remains subject to the order we entered pursuant to *Support Systems Int'l, Inc. v. Mack*, 45 F.3d 185, 186 (7th Cir. 1995), directing that all federal courts in this circuit return unfiled any papers he submits directly or indirectly unless and until he pays a $10,000 fine we imposed against him in August 2007. *See Google, Inc. v. Central Manufacturing, Inc.*, Nos. 07-1569, 07-1612 & 07-1651 (7th Cir. Aug. 23, 2007). At this point Stoller has a motion to intervene, but if on remand this litigation continues and the district court allows Stoller to intervene, he will have to pay the outstanding sanction or, as a practical matter, face certain default.

The rulings on the motions to intervene and the final judgment are VACATED, and the case is REMANDED for further proceedings.